## FIDELITY & CASUALTY CO. OF NEW YORK v. DOROUGH.

(Circuit Court of Appeals, Fifth Circuit. March 19, 1901.)

No. 922.

1. INSURANCE—FAILURE TO PROMPTLY PAY LOSS—CONSTITUTIONAL LAW—DUE PROCESS OF LAW—EQUAL PROTECTION.
Rev. St. Tex. 1895, art. 3071, imposing on a "life or health insurance company" an additional liability for its failure to pay a loss within the time specified, consisting of 12 per cent. damages on its amount, and attorney's fees for its collection, is not repugnant to the provision of the federal constitution against taking property without due process of law, and guarantying all persons the equal protection of the law.

2. SAME—APPLICATION OF STATUTE TO ACCIDENT COMPANIES.
Such article has no application to accident insurance companies.

3. SAME—ACTION ON ACCIDENT POLICY—EVIDENCE.
Where, in an action on an accident policy for injuries resulting in the death of the insured, defendant introduced the deposition of witness to a conversation with deceased, 13 days after the accident, intended to show how it occurred, it was competent for plaintiff to prove by persons present that it was entirely different, and to show what in fact were the statements of deceased in such conversation in relation to the accident,

whether they were a part of the res gestæ or not, and no predicate was needed for such evidence after proof of the conversation by defendant.

**4. REVIEW—PEREMPTORY INSTRUCTION FOR DEFENDANT—REFUSAL.**

Where there was evidence, though contradicted, strongly tending to support the fact on which plaintiff's case depended, error cannot be predicated on the refusal of a peremptory instruction for defendant.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

This is a suit instituted by Mrs. Mary E. Dorough, for herself and in behalf of the Hartford Fire Insurance Company, C. E. Angel, Trezevant & Cochran, Beers, Kennison & Co., Sun Mutual Fire Insurance Company, Continental Fire Insurance Company, Eugene Harbeck, Frank C. Case, Georgis Home Insurance Company, J. T. Harris, and L. L. Jester, against the Fidelity & Casualty Company of New York, upon a certain policy of insurance (called "accident insurance") issued by said insurance company to R. T. Dorough, husband of Mrs. M. E. Dorough, insuring him against bodily injuries sustained through external, violent, and accidental means, and naming the plaintiff, Mrs. M. E. Dorough, as beneficiary therein. The petition alleges that while said policy was in full force and effect the said R. T. Dorough, on the 25th day of June, 1898, while riding as a passenger on a passenger conveyance using steam as a motive power, to wit, on a passenger train of the International & Great Northern Railway Company, was accidentally and fatally injured in falling from said train, and by the fall so received by him his back, spine, shoulders, head, hand, and other portions of his body were injured; that thereafter, on the 15th of July, 1898, he died from said injuries, whereby the defendant became liable and agreed and promised to pay plaintiff the full sum of $10,000. It further alleges, in the event the evidence should show at the trial that the assured did not receive said bodily injuries that resulted in his death, as above shown, while riding as a passenger in or on a public conveyance of the kind and character theretofore alleged, that, notwithstanding, said injuries were in fact received by him, and the injuries so received were the result of external, violent, and accidental means, and that the defendant thereby became liable and agreed and promised to pay the plaintiff the sum of $5,000, as provided by said policy. The several parties for whose use and benefit the suit is brought are shown to have acquired certain interests in said policy of insurance as security for their several debts against the firm of Dorough & Dorough, of which firm R. T. Dorough was a member. The petition contains allegations to the effect that the time stated in said policy for payment had expired prior to the filing of the suit; that payment had been demanded before entering suit to compel payment, and, by reason of the defendant's failure and refusal to pay said policy when demanded, it became liable to pay the sum of 12 per cent. damages on said policy in addition to the amount of the face of the same. It furthermore alleges the employment of attorneys to institute and prosecute the suit, and an agreement to pay for such services the sum of $2,000,—same being a reasonable compensation for such services,—and that by the laws of the state of Texas the defendant company became liable to pay such attorney's fees. A copy of said policy, and application upon which the same was issued, are attached as an, exhibit to said petition. The defendant filed special exceptions to the plaintiff's petition upon the ground that none of the exemptions from liability specified in the policy are negatived, and that so much of said petition as seeks to recover $2,000 attorney's fees and the penalty of 12 per cent. on the face of the policy is unauthorized, because there is no valid law authorizing a recovery therefor. And for answer the defendant pleaded a general denial, and the following special defense: "For special answer herein the defendant says that the policy sued on contains, among others not necessary now to be set forth, the following stipulation, to wit: 'This insurance does not cover disappearances; nor war risks; nor voluntary exposure to unnecessary danger; nor injuries received while attempting to board or alight from a moving conveyance propelled by steam, electricity, or cable; nor injuries, fatal or otherwise, resulting from poison, or anything accidentally or otherwise taken, administered, absorbed, or inhaled; nor injuries, fatal or

otherwise, received while or in consequence of having been under the influence of or affected by, or resulting directly or indirectly from, intoxicants, anesthetics, narcotics, sunstroke, freezing, vertigo, sleepwalking, fits, hernia, nor any diseases or bodily infirmity.' And the defendant avers that the injuries received by the assured, R. T. Dorough, were received while he was attempting to alight from one of the trains of the International & Great Northern Railway Company while same was moving and being propelled by steam, and that therefore the defendant is not liable." The case was tried, and resulted in a verdict for the plaintiff, for the use and benefit of the several parties named in the petition, in the total sum of $3,513.09, and for herself in the sum of $7,126.91, and also for the further sum of $1,200 as damages, and $1,500 as reasonable attorney's fees, making a total of $14,340. The defendant sued out this writ. The propositions presented in this court are the following: "First. That there is no law authorizing the damages and attorney's fees claimed by defendant in error. Second. That the statutes of Texas under which 12 per cent. damages and attorney's fees are claimed by defendant in error are repugnant to those provisions of the constitution of the United States which provide that no man's property shall be taken without due process of law, and that all persons shall be accorded the equal protection of the law. Third. That the court erred in allowing Mrs. M. E. Dorough to testify in rebuttal, and for the purpose of impeaching witness W. Hugh Hunter, as to what statements the assured made as to how the injury occurred, some thirteen days afterwards, as the testimony attempted, without laying any predicate, to impeach Hunter, and was not admissible as part of the res gestæ. Fourth. That the court erred in not granting the motion of plaintiff in error to charge the jury peremptorily to return a verdict for the defendant; the defendant having proven that the injuries from which assured died were received while alighting from a moving train in violation of the provisions of the policy sued upon, and no evidence in rebuttal having been offered by the plaintiff."

P. B. Trafford, W. Frank Knox, F. M. Etheridge, and Ben. B. Cain, for plaintiff in error.

H. B. Marsh, A. G. McIllwaine, and J. M. Fitzgerald, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). It is conceded there is no law in the state of Texas authorizing the damages and attorney's fees awarded in the verdict and judgment in this case, unless it be found in article 3071, Rev. St. Tex., adopted in 1895, as follows:

"Art. 3071. In all cases where a loss occurs and the life or health insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, 12 per cent. damages on the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of such loss."

This section was a part of an act originally passed on May 2, 1874, prior to which time there were no statutes in the state of Texas regulating insurance companies. Other sections of the act of 1874, and afterwards incorporated in the Revised Statutes, are as follows:

"Art. 3073. It shall be unlawful for any life or health insurance company to take any kind of risks or issue any policies of insurance except those of life or health, nor shall the business of life or health insurance companies in this state be in any wise conducted or transacted by any company which in this, or any other state or country, is engaged or concerned in the business of marine, fire, inland or other insurance."

"Art. 3061. It shall not be lawful for any person to act within this state

as agent or otherwise in soliciting or receiving applications for insurance of any kind whatever or in any manner to aid in the transaction of the business of any insurance company incorporated in this state or out of it, without first procuring a certificate of authority from the commissioner of agriculture, insurance statistics and history."

In February, 1875, another act was passed regulating the business of fire, marine, and inland insurance companies. See Rev. St. Tex. arts. 3074, 3085. And in April, 1895, an act was passed which, among other things, defined and distinguished life and accident insurance companies as follows:

"Art. 3096a. A life insurance company shall be deemed to be a corporation doing business under any charter involving the payment of money or other thing of value to families or representatives of policy-holders, conditioned upon the continuance or cessation of human life, or involving an insurance guarantee, contract or pledge, for the payment of endowments or annuities. An accident insurance company shall be deemed to be a corporation doing business under any charter involving the payment of money or other thing of value to families or representatives of policy-holders, conditioned upon the injury, displacement or death of persons resulting from traveling or general accident by land or water."

Chapter 55 of the Laws of 1895 provides as follows:

"That there is hereby imposed upon and shall be collected from each and every person or firm acting as general agents of life, fire, marine and accident insurance companies who may transact any business as such in this state, an annual occupation tax of fifty dollars."

In Association v. Yoakum, 39 C. C. A. 56, 98 Fed. 251, followed in Insurance Co. v. Ross, 42 C. C. A. 601, 102 Fed. 722, this court held that article 3071, above quoted, being in force at the time the contract of life insurance was made, became as much a part and parcel of the contract as if it had been expressly incorporated in the policy, and that as against life insurance companies doing business in the state of Texas after article 3071 became a law, and issuing policies thereunder, said article was not in violation of the constitution of the United States. The question presented here, however, is not necessarily one of constitutionality of the said article in respect to the constitution of the United States, but, rather, of its applicability to accident insurance companies, as distinguished from life and health insurance companies. The contention was made below, and evidently allowed by the circuit court, and is renewed here, that an accident insurance company is a life or health insurance company, and therefore the statute applies. We have quoted the sections of the statute of Texas bearing upon insurance companies, and we think it plainly appears therefrom that accident insurance, in the legislative mind, was distinct from life and health insurance. The definitions of a life insurance company and of an accident insurance company, as given in the statutes above quoted, show this distinction. One is conditioned upon the continuance or cessation of human life; the other is conditioned upon injuries resulting from traveling, or general accident by land or water. Outside of the defining statute quoted, it is common knowledge that the one insures against the inevitable, with the intent that eventually the amount of the policy shall be paid to the beneficiary; the other insures against the accidental, with the intent that the liability of the insurance company to pay the amount or

amounts stipulated shall attach only on the occurrence of bodily injuries to the insured, sustained through external, violent, and accidental causes. The distinction between accident insurance and health insurance is equally clear. Accidental injury may happen; sickness and infirm health may be considered as inevitable. In the one the amount of indemnity stipulated may never become due; in the other, if the policy is kept in force the indemnity stipulated is certain to become due. There is little doubt that the statute in question, imposing penalties upon life and health insurance companies which are so combative as to contend for their supposed rights under written contracts containing resolutory and suspensive conditions, and based on warranties, in the courts of the state of Texas, when the right to so contest is denied no other class of suitors, is penal in its character; and, we take it, there is no doubt of the proposition that statutes penal in their nature are to be construed strictly, and not extended by implication, intendments, analogies, or equitable considerations. Black, Interp. Law, 286; Potter, Dwar. St. 245 et seq.; Suth. St. Const. §§ 358, 366; Railway Co. v. Dwyer, 84 Tex. 194, 19 S. W. 470; Schloss v. Railway Co., 85 Tex. 601, 22 S. W. 1014; U. S. v. Harris, 177 U. S. 305, 20 Sup. Ct. 609, 44 L. Ed. 780. If the statute in question is regarded as not penal, but only remedial, still it ought not to be construed to include more than its plain language imports. See Turner v. Cross, 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262. It follows that, in our judgment, there is no law of the state of Texas authorizing the damages and attorney's fees allowed in this case. What we have said disposes of the first contention of the defendant in error, and this disposition renders it unnecessary to pass upon the second any further than we have done above.

The record shows the following proceedings in the court below:

"The defendant, after having established the fact that Mrs. M. E. Dorough, the plaintiff, was present when a conversation occurred between R. T. Dorough, the assured, Hugh Hunter, and others, some thirteen days after the injury occurred from which he finally died, introduced the depositions of said Hunter in evidence, and included in said depositions are the following interrogatories and answers, to wit: 'Did you see and talk with the said R. T. Dorough after he was injured on June 25, 1898? If yes, how came you to see him? When and where and under what circumstances did you see him; and who, if any one, besides yourself was present at the time?' To which the witness answered as follows: 'I saw him and heard him talk some. I went to see him at his residence in Tyler. When I heard him talk, there were present Mrs. R. T. Dorough, Capt. R. S. Price, Paul Florian, Chas. Gilmour, and myself, as well as I remember. Those were all that were in the room at the time.' 'Int. 4. If you have stated that you saw the said R. T. Dorough subsequent to the time he was injured, then state whether or not he made any statements to you as to how he came to be injured. If you say he did, then state fully, particularly and in detail, as nearly as you can in his exact language, what he said with reference thereto. State who, if any one besides yourself were present and heard the statements so made.' To which the witness answered as follows: 'All the parties that I have mentioned above were in the room when I heard Mr. Dorough talk on the occasion named. Mr. Dorough's talk was directed more to Mr. Florian and Capt. Price, because they were standing nearer the bed on which Mr. Dorough lay. Mr. Gilmour and myself stood a little away from the bed, but near enough to hear distinctly. Mrs. Dorough was also in the room. Mr. Dorough said that when the accident occurred which caused his injury he was coming into Tyler on the I. N. G. N. R. R., on the branch that runs from Troupe to Mine-

ola; that the train pulled up and stopped at the water tank a short distance before reaching the station; that he there got out on the steps of the car on which he was riding, and when the train moved up and was crossing a street or road near the water tank he jumped off of the train as it was crossing this street, or near there, as this point was considerably nearer his residence than the station was; that when he jumped off the moving train he in some way fell or slipped, and his hand got under a .wheel of the moving train, and before he could remove it the flange of the wheel ran over his hand lengthwise and crushed it; that this happened during the night.' After the defendant's .evidence was closed, the plaintiff, Mrs. M. E. Dorough, was recalled to the stand to contradict said Hunter as to the conversation which occurred, and to which said Hunter testified in his depositions; and said witness, having testified that she heard the conversation, was asked by her counsel the question whether or not said R. T. Dorough made the statements testified to by said Hunter in her answer to the fourth direct interrogatory, to which she replied, in substance: 'No; there was no such statements made by Mr. Dorough as testified to by Mr. Hunter.' The counsel for plaintiff then asked her to state what she heard Mr. Dorough say as to the cause of the accident in the presence of said Hunter; and witness stated that Mr. Dorough said that as he was alighting from the train he slipped on something and fell, injuring his back and arm, and that the train was standing still when he fell. Defendant objected to the question propounded to Mrs. Dorough as to what Mr. Dorough stated in conversation with Hunter, because: First. No predicate had been laid to impeach said Hunter in the cross-interrogatories, which cross interrogatories are as follows, to wit: 'Cross Interrogatory 1. How many times did you see Mr. Dorough after he was injured, and prior to his death? When and where did you see him and converse with him? Name all the parties who were present at each and all the conversations you had with him? Cross Interrogatory 2. If in answer to direct interrogatory five you attempt to repeat a statement made by Mr. Dorough as to the cause of his injuries, then say when this statement was made to you; that is to say, give the date of the conversation, as well as the hour of the [day]. Is it not true that the only conversation you ever had with Mr. Dorough after he was injured was at his residence, in the forenoon of Wednesday, the 7th day of July, 1898? Did Mr. Dorough at any time while you were in his presence complain of pain? Of which of his injuries did he most complain?' And said two cross interrogatories are the only interrogatories propounded to said Hunter by the plaintiff. Second. Because the question asked Mrs. Dorough called for a statement made by R. T. Dorough, the deceased, which was not a part of the res gestæ, in that same was made more than twelve days after the accident, and which was not admissible for the purpose of impeaching said Hunter. The court, over the aforesaid objection of defendant, admitted said evidence, but instructed the jury when said evidence was admitted, and afterwards in his charge, that they would only consider the same for the purpose of determining whether or not Hunter's testimony as to what Dorough said was true, and for no other purpose, to which ruling of the court the defendant, in open court, excepted."

We are unable to discover any injury in the above rulings—assuming them to be erroneous—to the defendant below. The defendant having offered the deposition of Hunter to prove a conversation with R. T. Dorough, the assured, had in the presence of several other persons besides the witness, it was perfectly competent for the plaintiff to prove that no such conversation took place, or that, if the conversation did take place, it was not such a conversation as was testified to by the witness Hunter, but varied therefrom or was otherwise explainable. If the conversation of Dorough 13 days after the accident occurred was admissible as affecting the issues in the case, the plaintiff had as much right to prove what it' was as the defendant below had. Carver v. U. S., 164 U. S. 694, 17 Sup. Ct. 228, 41 L. Ed. 602. And after it was proved on the other side no predicate was

necessary. As we look at the bill of exceptions, no error prejudicial to the defendant below was committed in the rulings restricting the contradictory evidence offered by the plaintiff. If error at all, it was an error in favor of the defendant below, for which it cannot complain in this court.

The transcript shows that on the trial there was evidence strongly tending to show that the injuries from which the assured, Dorough, died were received while alighting from a moving train; but there was also evidence tending to show that Dorough received his injuries while traveling upon a railroad train, and when attempting to alight therefrom while the said train was at a standstill. As the evidence was in this condition, it was not error for the trial judge to refuse to peremptorily instruct the jury to find a verdict for the defendant.

This disposes of all the contentions presented in this court, and, although we find for the plaintiff in error on the proposition as to attorney's fees and damages, we think justice can be done between the parties by modifying the judgment rendered in the court below, and without reversing it and awarding a new trial. It is therefore ordered and adjudged that the judgment of the circuit court be amended and modified by reducing the amount adjudged in favor of Mrs. M. E. Dorough and against the Fidelity & Casualty Company of New York from the sum of $9,827.91 to $7,126.91, and as thus modified the judgment is affirmed, with costs; the costs of this court, including the transcript, to be paid by the defendant in error.