MUTUAL RESERVE LIFE INS. CO. OF NEW YORK v. DOBLER.

(Circuit Court of Appeals, Ninth Circuit. May 1, 1905.)

No. 1,126.

1. INSURANCE—APPLICATION—ANSWERS—OTHER INSURANCE.

An application for life insurance requested insured to answer whether he then had any insurance on his life, which he answered, giving the name and amount of a life insurance policy, and the name of the company writing the same, and contained a further question, "Have you any other insurance?" which he answered, "None." *Held*, that such questions did not call for an answer as to other than life insurance, so that insured's failure to disclose that he then had certain policies of accident insurance did not constitute a breach of warranty.

2. SAME.

Where questions asked by an insurance company in an application were of doubtful import, insurer was bound by an answer to which the questions were properly susceptible.

3. SAME—CONSULTING PHYSICIANS.

Where insured answered certain questions with reference to when he last consulted a physician, the name of the physician, the reason, etc., by stating that he did not remember when he had consulted a physician, that it was years ago, the fact that on several occasions a physician, who was a friend of insured, made physical examinations of him without charge, for the purpose of ascertaining his physical condition, on the physician's own initiative, and without finding any physical infirmity, and without his prescribing for insured, did not show that such answers were untrue.

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

On October 20, 1902, Frederick C. Dobler made application in writing to the plaintiff in error, a life insurance company of the state of New York, for a policy of insurance in the sum of $10,000. The application was made at Baker City, Ore., and was there delivered to W. H. Stalker, a representative of the plaintiff in error, who forwarded the same to the home office of the latter in New York. The application was there accepted, and the policy was accordingly issued and forwarded to the said representative of the company at Baker City, by whom it was delivered to the insured upon the payment of the premium. In March, 1903, the insured was accidentally killed

by a snowslide. Due notice and proof of his death were thereafter delivered to the plaintiff in error. The latter denied its liability on the policy, but retained the premium. The defendant in error, who was the beneficiary under the policy, brought this action to recover thereon. The plaintiff in error defended on the ground that there was a breach of warranty, in that the insured had failed to answer the question, "Have you any other insurance on your life?" and, second, that there was a breach of warranty in that he did not truly answer the question, "When did you last consult a physician and for what reason?" On the trial of the cause before a jury it appeared that the application of the insured contained the following questions and answers: "Q.10. Have you now any insurance on your life? If so, where, when taken, for what amounts, and what kinds of policies? A. $5,000.00. Washington Life. Combination bond. May, 1900. Q. Have you any other assurance? A. None." It was claimed by the plaintiff in error that these answers were not full, complete, and true, and it was shown that at the time of making said written application said insured held an accident insurance policy of $5,000 in the Travelers' Insurance Company, and another accident policy of $1,000 in the same company. The defendant in error was permitted, over the objection of the plaintiff in error, to introduce the oral testimony of W. H. Stalker, who testified that the insured told him at the time of preparing the application that he was carrying the said accident policies. The witness said: "He took particular pains to explain to me all his business affairs in connection with insurance. I told him that the $5,000 accident insurance, likewise the $1,000 accident policy, was not called for in answer to question 10 in the application." On this branch of the case the court instructed the jury as follows: "If you find from the evidence that a doubt might reasonably and fairly be entertained as to whether this question called for disclosure of any purely accident insurance that Mr. Dobler then carried, and that Mr. Dobler understood that it did not call for the disclosure of purely accident insurance, but only called for the disclosure of life insurance, and if such was the understanding of the defendant's agent at that time soliciting the insurance and receiving the application, then you may conclude this answer to this question was full, complete, and true." The application also showed the following questions and answers: "Q. When did you last consult a physician and for what reason? A. Do not remember—years ago. Q. How long since you consulted or were attended by a physician? Give date. A. Do not remember; long time ago." To show that these answers were untrue, the plaintiff in error introduced the evidence of Dr. Phy, who was asked whether he had ever attended or been consulted as a physician by the insured for any disease or ailment during his lifetime, to which he answered, "No," and thereafter said: "I may add further that I was an intimate friend of Frederick C. Dobler during the last six years of his life, and in conversation with him during our early friendship I had mentioned to him the advisability of persons in general having frequent physical examinations by their physicians as a matter of precaution. Mr. Dobler seemed impressed with this idea, and during the remainder of his lifetime I made several physical examinations of him. At no time did I find any physical ailment. All of these examinations were a matter of precaution with Mr. Dobler, and not with any idea that he had any physical ailment. I never prescribed any medicine for him. I did on several occasions advise him concerning hygienic measures which every one should follow to preserve their health." He was asked further whether in his personal knowledge the insured was ever afflicted with any disease or ailment, to which he answered, "No." Concerning these questions and answers the court charged the jury as follows: "You are instructed that these questions call for a disclosure of any and all instances, if any, in which Mr. Dobler, the deceased, had consulted or been attended by a physician for some disease or ailment that he had or supposed he had; and unless the evidence in the case is such as to show that he had consulted or been attended by a physician for some ailment which he had or supposed he had, you are instructed that those answers to those questions are full, true, and complete, and you may disregard that evidence." The jury returned a verdict for the defendant in error for the full amount sued for, and judgment was rendered thereon.

Galusha Parsons and Edward L. Parsons, for plaintiff in error.
Warburton & McDaniels, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The application for the policy of insurance was made in the state of Oregon under the direction of W. H. Stalker, an agent of the plaintiff in error, who, as such agent, received the same and forwarded it to the home office of the plaintiff in error. The risk was accepted, and the policy was sent to Stalker, and he delivered it to the insured upon his paying the premium. Stalker had been appointed the agent of the plaintiff in error by a written instrument reciting that he was "appointed the representative of said company for the purpose of procuring applications for assurance therein in the territory embraced in this agreement, and for the further purpose of appointing suitable subagents on terms to be approved by the company, subject to the terms and conditions herein." The instrument stipulated that the representative shall "possess no authority not herein expressly granted, shall not make, alter, or discharge any contract, nor waive forfeiture." It further provided that the agent was to devote his entire time and best energy to the service of the company, and to occupy and work efficiently the territory assigned to him. The application contained the stipulation that the person soliciting or taking the same, and also the medical examiner, should be the agents of the applicant as to all statements and answers in the application, and that no statements or answers made or received by any person or to the company should be binding upon the latter unless reduced to writing and contained in the application. It also contained the express warranty of the applicant "that I have not nor has any one on my behalf made to the agent or medical examiner or to any other person any answers to the questions contained in this application other than or different from the written answers as contained in this application," and that "I have not nor has any one on my behalf given to the agent or medical examiner or to any other person any information or stated any facts in any way contradictory of or inconsistent with the truth of the answers as written," and the further stipulation that the validity of the policy was to be dependent on the truth or falsity of the written answers.

Did the trial court err in admitting in evidence the testimony of the agent of the plaintiff in error? In the written application it appeared that to the question, "Have you now any insurance on your life?" the insured answered, giving the name and amount of a policy which he carried in the Washington Life. To the further question, "Have you any other insurance?" he answered, "None." The application, it is true, brought notice to the insured that the agent of the company was to be his agent as to all statements and answers in the application, and the insured therein warranted that he had not made answers other than those which were written, and that he had not given to the agent information or statements con-

tradictory of or inconsistent therewith. We come, then, to the question whether the oral answers which he made were inconsistent with or contradictory of the written answers, and what was required to be disclosed in answer to the question whether the insured had other insurance on his life. The proof was that at that time he held two accident insurance policies which he did not mention in the written application. It seems to us reasonably clear that the first of these questions does not call for a disclosure of any insurance except that which is known as life insurance. In the ordinary understanding and usage there is a well-defined distinction between life insurance and accident insurance. In the latter the contract is to pay a fixed sum in case of death resulting from external, violent, and accidental means, and ordinarily for the payment of a fixed sum periodically during incapacity caused by accidental injury. The policy covers a short period of time, ordinarily not longer than a year. Generally no inquiry is made as to the age or health of the applicant, and the liability is often restricted to injury resulting from accidents of a particular nature, or accidents pertaining to a particular occupation, or accidents occurring while the insured is traveling by public conveyance. It is not shown what kind of accident insurance the insured in this case was carrying, but from the name of the company, "The Travelers' Insurance Company," it may be assumed that the insurance was of the last-named class—insurance against accidents in traveling. Life insurance companies, on the other hand, insure the payment of a fixed sum upon the occurrence of the inevitable event of death. They make careful inquiry as to the age, health, and personal history of the applicant. It may be material to them to know whether the risk has been accepted or refused by other insurance companies. The distinction has been recognized by the courts, and it has been held that legislation referring to life insurance and life insurance companies does not include within its scope accident insurance and accident insurance companies. Fidelity & Casualty Co. v. Dorough, 107 Fed. 389, 46 C. C. A. 364; Ticktin v. Fidelity & Casualty Co. of New York (C. C.) 87 Fed. 543. The courts have also held that mutual aid associations and insurance companies are to be distinguished, and that statutory provisions affecting insurance companies do not affect mutual aid associations, although one of their prominent features is the obligation to pay a fixed sum as insurance upon the death of a member. Dickinson v. Ancient Order of United Workmen, 159 Pa. 258, 28 Atl. 293; Theobald v. Supreme Lodge, 59 Mo. App. 87.

But it is not necessary to rest the decision of this branch of the case upon the recognized distinction between life and accident insurance. In any view of the case, we think that the most that can be claimed in behalf of the plaintiff in error for the questions so propounded to the applicant was that they were so worded as to leave it uncertain whether they called for a disclosure of the accident insurance which he carried at that time. If the insurance company in its printed application employed ambiguous terms or words of doubtful import, it cannot complain if they were construed as

they were by the applicant, or if the agent so advised him as to their meaning. The agent was appointed for the purpose of procuring applications, and it is reasonable to assume that, in discharging his duty to the company, it was within the scope of his powers to construe for an applicant for insurance doubtful phrases, if any there were, in the application. It may be inferred from the policy itself that it was a matter of indifference to the insurance company whether or not the insured carried a temporary policy of accident insurance, for there was nothing in the terms of that instrument to restrict his right to take out accident insurance at any time during the life of the policy, and the fact that he had at the time of making his application accident insurance could have been of no value to the plaintiff in error, for such insurance was not based upon a physical examination of the insured, nor upon an inquiry concerning his health. But it is said by the plaintiff in error that the insured was bound to make truthful answers, and that while it may be doubtful whether the first question, "Have you now any assurance on your life?" called for the disclosure of accident policies, the question immediately following, "Have you any other assurance?" was comprehensive enough to require the applicant to make known the fact that he was carrying an accident insurance policy. It is true that the last question is comprehensive, and, standing by itself, might properly include all kinds of insurance, whether life, fire, marine, or insurance of crops as well as accident insurance. It will not be contended, we assume, that an answer was expected as to all these various kinds of insurance. But, when taken in connection with the preceding question, it would seem to us that the purpose of the last question was only to inquire whether the applicant had fully answered the previous question, and that its purport was, "Have you now answered as to all life insurance that you carry?" In Continental Life Ins. Co. v. Chamberlain, 132 U. S. 304–311, 10 Sup. Ct. 87, 89, 33 L. Ed. 341, the court said: "The purport of the word 'insured' in the question, 'Has the said party any other insurance on his life?' is not so absolutely certain as, in an action upon the policy, to preclude proof as to what kind of life insurance the contracting parties had in mind when that question was answered. Such proof does not necessarily contradict the written contract." In Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408, the court said: "If a policy is so drawn as to require interpretation and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. This rule, recognized in all the authorities, is a just one, because those instruments are drawn by the company"—citing First National Bank v. Hartford F. Ins. Co., 95 U. S. 673, 24 L. Ed. 563. In McMaster v. N. Y. Life Ins. Co., 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64, the court said: "The rule is that if policies of insurance contain inconsistent provisions, or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract." In Penn. Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 72 Fed. 413, 19 C. C. A. 293, 38 L. R. A. 33, the insured was

asked if he had other policies in other companies, and, if so, to state the companies and the amounts. The court held that within the scope of the question the insured was not required to mention certificates of insurance in the Knights of Pythias and the Royal Arcanum Mutual Aid Associations. Judge Taft, speaking for the court, said:

"It will be conceded that these associations which are primarily for social and charitable purposes, and for securing efficient mutual aid among their members, are not usually described as insurance companies. That the certificate which they issue to a member, insuring upon certain conditions the payment of a sum certain to the member's representatives on his death, has much resemblance in form, purpose, and effect to an insurance policy, is true; and, if we were called upon to give the application a wide and liberal construction in favor of the insurance company, we might properly hold that the question embraced in its scope every association or individual contracting to pay money to one's representatives in the event of his death. Such a construction might be warranted by the probable purpose of the question, to enable the company to judge how great a motive his life insurance would furnish the applicant for self-destruction or the fraudulent simulation of death. But we are here considering a contract and application drawn with great nicety by the insurance company, and framed with the sole purpose of eliciting from the insured full information of all the circumstances which the company's long experience has led it to believe to be valuable in calculating the risk. * * * Having in view the well-established rule that insurance contracts are to be construed against those who frame them, * * * and that any doubt or ambiguity in them is to be resolved in favor of the insured, we conclude that a certificate in a mutual benefit and social society was not within the description, 'policy of life insurance in any other company.'"

Of similar import are Fidelity Mut. Life Ass'n v. Miller, 92 Fed. 63, 34 C. C. A. 211, and Equitable Life Assurance Society v. Hazelwood (Tex. Sup.) 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893.

The plaintiff in error cites and relies upon Assurance Co. v. Building Ass'n, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213. That was a case of fire insurance. The policy expressly and in unambiguous terms provided that the contract of insurance should be void in case other insurance had been or should be made upon the property, and not consented to by the insurer, and stipulated that the agent should have no authority to alter or contradict the express terms of the policy. The insured, at the time of taking out the policy in question, had other insurance on the property. There was evidence tending to show that the agent of the insurance company knew of such other insurance, and with full knowledge of that fact accepted the risk. The court said: "Contracts in writing, if in ambiguous terms, must be permitted to speak for themselves, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts." In this expression of the court is found the difference between that case and the case at bar. In the latter, as we have found, ambiguous terms were used, and in such a case it is not a departure from the settled rules of evidence to admit parol testimony to explain the understanding which the parties had of the words in question.

We find no error in the instructions of the trial court to the jury concerning the further defense of breach of warranty by the insured

in his answer to the question whether he had consulted or been attended by a physician. The questions were repeated in various forms, as follows:

"(1) When did you last consult a physician and for what reason? (2) Give name and address of last physician consulted. (3) How long since you consulted or were attended by a physician? Give date. (4) State name and address of such physician. (5) For what disease or ailment? (6) Give name and address of each and every physician who has prescribed for or attended you within the last five years, and for what diseases or ailments, and date. (7) Have you had any illness, disease, or medical attendance not stated above?"

To the first and third of these questions the insured answered: "Do not remember; years ago." "Do not remember; long time ago." To the others he made no answer. It is plain that by these questions the plaintiff in error sought to ascertain whether the applicant had consulted a physician for any disease or ailment or had been attended or prescribed for by a physician for a disease or ailment. In Moulor v. Ins. Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447, it was said that the application for insurance must be understood to relate to matters which have a sensible, appreciable form. In Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 Sup. Ct. 119, 28 L. Ed. 708, it was said that the questions in an application do not require the applicant to tell every incident or accidental or slight disease or ailment which left no trace of injury to health, and were unattended by substantial injury or inconvenience or prolonged suffering; and in Hubbard v. Mutual Reserve Fund Life Ass'n, 100 Fed. 719, 40 C. C. A. 665, it was held that the word "consulted," found in such questions, did not relate to the opinion of a physician concerning a slight and temporary indisposition, speedily forgotten. Of similar import are the decisions of the Supreme Court of Michigan in Plumb v. Penn. Mut. Life Ins. Co., 65 N. W. 611, and the Supreme Court of Vermont in Billings v. Metropolitan Life Ins. Co. (Vt.) 41 Atl. 516, and other decisions too numerous to require further specification. In the present case the evidence wholly fails to show that the insured ever consulted or was attended by a physician for any ailment of even the most trivial character. The only evidence is that a physician who was his friend made at intervals physical examinations of him to ascertain the condition of his health, and that this was done, not at the instance of the insured, but upon the physician's own initiative, without charge, and for the sole purpose of rendering a friendly service. It would be a misuse of words as they are ordinarily understood, and especially as they were employed in the application for insurance, to say that in so submitting himself to those examinations the insured consulted a physician or was attended by him.

The judgment of the Circuit Court is affirmed.