182 So.2d 869

## MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION OF OMAHA

v.

### Edith L. REID.

6 Div. 957.

Supreme Court of Alabama.

Feb. 10, 1966.

138

Murray A. Battles, Atlanta, Ga., and Fred C. Folsom, Cullman, for appellee.

J. Kirkman Jackson, Birmingham, for appellant.

LIVINGSTON, Chief Justice.

This appeal is from a judgment for the plaintiff for $5,000 of the Circuit Court of Cullman County, Alabama, based on a health and accident insurance policy issued by the appellant (defendant below), insuring the life of one Cannie T. Reid against accidental death. The death benefit was contained in a Rider attached to the health and accident policy.

The original complaint consisted of five counts, which was later amended by the addition of Counts 6, 7 and 8. Count 8 set out the policy sued on in haec verba. To the complaint as initially filed, and as amended, appellant filed a demurrer. The demurrer to Counts 1, 2, 3, 4, 5 and 6 was sustained, and overruled as to Counts 7 and 8. To Counts 7 and 8, the defendant filed first, a plea of the general issue; second, that the insured of the policy sued on came to his death by suicide; and third, Standard Provision 15 of the policy, which, in words and figures, is as follows:

"15. Insurance with Other Insurers: If there be other valid coverage, not with this Association, providing benefits for the same loss on other than an expense incurred basis and of which this Association has not been given written notice prior to the occurrence or commencement of loss, the only liability for such benefits under this policy shall be for such proportion of the indemnities otherwise provided hereunder for such loss as the like indemnities, of which the Association had notice (including the indemnities under this policy), bear to the total amount of all like indemnities for such loss, and for the return of such portion of the premium paid as shall exceed the pro rata portion for the indemnities thus determined."

In connection with the third plea, the defendant tendered and paid into court the sum of $10.00, which it was stipulated was the amount required to be refunded under the provisions of the policy in the event it was decided that Standard Provision 15 applied.

The appellee (plaintiff below) took issue on those three pleas.

It was stipulated at the outset of the trial between counsel for plaintiff and defendant that the policy sued on was in force and effect at the time of the insured's death, and that the appellant had received appropriate notice and proof of his death, resulting from gunshot wounds sustained on May 4, 1961, and the plaintiff was the wife of the deceased and the beneficiary named in the policy, and that the policy was her property.

The case was tried by the court without a jury and the evidence was taken ore tenus before him. The circuit court entered a judgment for the plaintiff for $5,000 and the costs of court, and the defendant duly and seasonably perfected its appeal from that judgment.

The appellant assigns 10 alleged errors.

Appellant states in brief:

"In the written argument hereinafter made, the argument will be divided into two aspects only with respect to the main questions involved. The first of such aspects will be concerned with the rendition of a judgment in favor of the plaintiff and against the defendant rather than in the reverse, and in the expressed conclusion of the trial court that the deceased came to his death by accidental means. The second main aspect of the appended argument will be devoted to the correctness vel non of the ruling of the Court below on Standard Provision 15 of the policy of insurance declared on.

"Third, and very briefly, the further question is raised touching the correctness vel non of the exclusion from the evidence of the first page of the Coroner's Inquest.

"The application of the assignments of error to these three phases of the

argument of the appellant being manifest, they will briefly if at all be alluded to in the written argument."

The policy sued on became effective June 6, 1959. Undeniably, Cannie T. Reid was killed by the blast of an automatic shotgun on the morning of May 4, 1961.

The pleadings in the case are adequate to raise the three questions presented by appellant for decision of this Court, and we will discuss them as raised.

■ In Alabama, it is well established that where the evidence is taken ore tenus before the trial judge, this Court will not disturb the trial court's conclusion on issues of fact, which is likened unto the verdict of a jury unless plainly and palpably wrong.

The first question is: Did Reid commit suicide, or was his death accidental?

The trial court found the following facts:

"May 4, 1961 Cannie T. Reid arose from bed and went to the kitchen to turn on the stove. He then went back into the bedroom and awoke his wife and asked her to prepare breakfast. The evidence indicated that she had been in the kitchen about five minutes when she heard a blast from the front of the house. She hollowed for her son to see about his father. Both parties reached him a few seconds afterwards. They found him lying parallel to the bed with his feet toward the head. A 16 gauge shotgun was laying at the head of the bed with muzzle pointed in the general direction of the body. A spent shotgun shell was under the foot of the bed and near the deceased's head, a gunshot wound was in the deceased's upper chest and slightly to the left of center. He was dead at the time the Plaintiff and her son got to him. The deceased was dressed in jockey shorts and a sleeveless undershirt.

"There was testimony by several of the witnesses that he had made a statement the day before he had to clean his shotgun and he was going to carry it to the service station he owned which was only about 50 yards from where he lived.

"The testimony also indicated he had powder burns around the wound and also had powder burns on his left hand. The shotgun's magazine was empty and there were no other shells visible in or about the room. The room was relatively small and there were no facts concerning the dimensions of the room that lent any weight to whether he was accidently shot or whether he took his own life intentionally. There was no note or writing left by the deceased and there were no eyewitnesses to the shooting.

"The defendant offered into evidence the death certificate and the testimony of the Coroner, Mr. Grady Moss. He testified the powder burns in and about his chest and left hand and also the size of the wound along with his reasoning indicated that Cannie T. Reid took his own life.

"The deceased was fond of hunting and there was testimony that he had won the gun in a contest and was very proud of it. He showed it to many of his friends and acquaintances. Mr. Reid was right-handed but he fired a shotgun from his left shoulder.

"The testimony further showed that the deceased was a happily married man with three children, two of which were married. His bank statement and financial position was good. There was some testimony that he was worried about new interstate 65 bypassing his service station, however, the testimony of his gas supplier was such that his gallonage per month had not decreased by the building of the new highway.

"He was a man of even temper and loved to hunt, fish and other outdoor sports. He was jovial and from the testimony there was nothing that seemed to worry him. His health was also good."

There was also evidence tending to prove that Reid had had the safety on this particu-

lar gun changed from à right-hand position to a left-hand position; that the gun had a "soft trigger," or fired easily; that at times there was a malfunction in the ejectment system of the weapon, and that as a result of same, the weapon had been accidently fired at times when it was thought to be empty of shells.

■■ There are presumptions favoring love of life, avoidance of harm or danger, and with some limitations, exercise of ordinary care. While the presumption against suicide is a strong one, and while such presumption, the courts have declared, stands until overcome by testimony, it is prima facie only, rebuttable, and not a rigid rule of law. The presumption operates to its fullest extent only where there is no proof as to whether the death was accidental or suicidal. 31A C.J.S. Evidence § 135.

In the case of New York Life Insurance Co. v. Beason, 229 Ala. 140, 155 So. 530, the evidence relied upon to show self-destruction, as well as that tending to disprove suicide, was wholly circumstantial and afforded conflicting inferences, this Court said:

· "The law presumes that a normal, sane person will not commit suicide, and this presumption, referred to in the books as a presumption of innocence, is not merely an administrative feature intended only to 'shift the burden or proceeding with the evidence' to the opposite party. It is a substantive right and not a mere 'technical incident of the trial wrought for administrative purposes.' It does not spend its force as substantive evidence until the testimony in the case is sufficient, in the judgment of the jury, to overcome it. Mutual Life Ins. Co. of N. Y. v. Maddox, 221 Ala. 292, 128 So. 383; New York Life Ins. Co. v. Turner, 213 Ala. 286, 104 So. 643."

It was said in Penn Mut. Life Ins. Co. v. Cobbs, 23 Ala.App. 205, 123 So. 94:

"We do not mean to say that suicide cannot be established by circumstantial evidence, but we do lay down the rule as applicable to any case, either civil or criminal, that, where a felonious intent is involved, and the facts relied on to prove the act are circumstantial, the intent with which the act was done is a question for the jury, to be determined from all the facts and circumstances surrounding the transaction. Love v. State, 16 Ala.App. 44, 75 So. 189; Brown v. State, 142 Ala. 287, 38 So. 268; Jackson v. State, 94 Ala. 89, 10 So. 509; Wigmore Ev. § 300. Where the facts, as here, are circumstantial, the law indulges the presumptions in favor of the innocence of the insured, until the evidence of suicide is so strong and convincing as to exclude every other reasonable hypothesis than that the insured alone is guilty. McKenzie v. State, 19 Ala.App. 319, 97 So. 155."

And in the case of Fleetwood v. Pacific Mutual Life Ins. Co., 246 Ala. 571, 21 So.2d 696, 159 A.L.R. 171, it was said:

"* * * If there is direct and positive evidence of suicide and there is no conflicting inference from any evidence as to suicide, then the presumption against suicide has no field of operation. On the contrary, if there is direct and positive evidence of suicide and there is a conflicting inference from any evidence as to suicide, then the presumption against suicide has a field of operation. If the evidence is all circumstantial, then the presumption against suicide has a field of operation. We may add that inference means reasonable inference and not mere speculation or conjecture. Alabama Power Co. v. Watts, 218 Ala. 78, 117 So. 425; Sovereign Camp, W. O. W., v. Hackworth, supra [200 Ala. 87, 75 So. 463]."

■ After carefully considering all of the evidence in this record, we are clear to the conclusion that the trial court did not

err when he found that the death of Cannie T. Reid was accidental. There is ample evidence to sustain such a finding.

We come now to the second question posed.

The health and accident policy issued by the appellant to appellee's husband, and the subject of this suit, provided for total disability payments, partial disability payments, specific benefits, such as the loss of a hand, arm or eye, and for disability benefits in the event of sickness, and for injuries due to the hazards of airline travel. A rider attached to the policy provided for the payment of $5,000 in the event the insured died as the result of an accident. The policy, when it was delivered, had attached to it the application therefor and the answers to questions asked in said application and which answers were supplied by Reid, the insured.

We say here that the policy in suit is a simple accident and health policy, providing for the payment of $5,000 in the event of death of the insured by accidental means.

The question now under discussion arises from Reid's negative answer to Question 6(a) of the application. The question: Are you or your listed dependents, if any, now covered by other *personal insurance*, or are applications now pending for *such insurance?* (monthly indemnity, hospital benefits, etc.).

At the time Mr. Reid answered Question 6(a) in the negative, he had in force with The Travelers Insurance Company of Hartford, Connecticut, a group policy of insurance providing for the payment to a named beneficiary the sum of $5,000 in the event of Reid's death. The group policy, in addition to death benefits, provided additional benefits in the event of death, dismemberment or loss of sight by accidental means; that is, that in the event any of the above-enumerated losses occurred through accident, the company would pay the named beneficiary or the named insured, as the case might be, additional benefits over and above those provided in the event of death from whatever cause. This, of course, included death by accident.

This was simply a life policy with other incidental benefits and was issued to Mr. Reid solely by virtue of the fact that he was a Shell Oil Company dealer.

So far as we have been advised, the question now under discussion is one of first impression in this jurisdiction.

Our cases are to the effect that when an application for insurance, and the answers to questions contained in the application are attached to the policy when delivered to the insured and retained by him, they all constitute the contract between the parties. Penn Mutual Life Ins. Co. v. Cobbs, supra.

Therefore, the policy, the application and the answers to questions contained in the application, must be construed together in determining whether the policy sued on was limited by proration under Standard Provision 15, set out above.

Several factors must be considered: (1) the types of insurance provided for in both the policy of insurance issued by the defendant company and the group policy issued by The Travelers Insurance Company of Hartford, Connecticut; (2) the meaning of Question 6(a) in the application for the policy in suit; and (3) the meaning of Standard Provision 15 of the policy in suit. Admittedly, The Travelers policy was in force at the time Mr. Reid died and the defendant had no notice of it.

Basically, the defendant's policy was for income protection, the payment of monthly benefits due to sickness or injury. The other benefits provided for in said policy, one of which was for accidental death, were only incidental; whereas, basically, The Travelers policy was a life policy providing for payment on the death of Reid regardless of how he died. True, the two policies had some overlapping benefits.

When the policy in suit is construed, as it must be, in the light most favorable to the insured, it is clear that notice of The Travelers policy was not required under it. The requirement that the defendant be notified of the existence of additional insurance, or of pending application therefor, had reference to the kind of insurance covered by the policy in suit, i. e., accident or health insurance. The policy in suit must be construed in the light of the interpretation the ordinary man might place on it in view of the usage of the insurance business and under the rule that any ambiguity must be resolved against the company.

It is clear that there is a difference between a life policy with double indemnity and disability benefits and an accident and health policy, such as we have here providing for death benefits. The dominant purpose of the two kinds of policies is entirely different, the risks they cover overlap in only a small segment, and it would not occur to the ordinary man that one was additional insurance of the sort covered by the other.

A case very much in point is Mutual Reserve Life Ins. Co. of New York v. Dobler, 9 Cir., 137 F. 550, p. 553, where it was said:

"In the ordinary understanding and usage there is a well-defined distinction between life insurance and accident insurance. In the latter the contract is to pay a fixed sum in case of death resulting from external, violent, and accidental means, and ordinarily for the payment of a fixed sum periodically during incapacity caused by accidental injury. The policy covers a short period of time, ordinarily not longer than a year. Generally no inquiry is made as to the age or health of the applicant, and the liability is often restricted to injury resulting from accidents of a particular nature, or accidents pertaining to a particular occupation, or accidents occurring while the insured is traveling by public conveyance. * * * Life insurance companies, on the other hand, insure the payment of a fixed sum upon the occurrence of the inevitable event of death. They make careful inquiry as to the age, health, and personal history of the applicant. It may be material to them to know whether the risk has been accepted or refused by other insurance companies. The distinction has been recognized by the courts, and it has been held that legislation referring to life insurance and life insurance companies does not include within its scope accident insurance and accident insurance companies. Fidelity & Casualty Co. v. Dorough, [5 Cir.] 107 Fed. 389, 46 C.C.A. 364; Ticktin v. Fidelity & Casualty Co. of New York, C.C., 87 Fed. 543. * * *"

We could well rest the decision here on this phase of the instant case. But it is not necessary that we rest it here. We think the most that can be claimed on behalf of the defendant for Question 6(a) was that it was so worded as to leave uncertain as to whether or not it called for disclosure of the life policy which was in force at the time. If the insurance company, in the application, employed ambiguous terms or words of doubtful import, it cannot complain that they were construed by the applicant as they were.

Question 6(a) of the application asked Reid to list his *other personal insurance.* Had the question stopped here, it would be clearly ambiguous. But the question went further and placed a further limitation thereof of "monthly indemnity, hospital benefits, etc." Clearly, the group policy held by Reid at the time of his death did not provide for monthly benefits or hospital benefits, and the meaning of "etc." is ambiguous to one who has no knowledge of insurance, and there was no evidence whatever to show the meaning of Question 6(a) was made clear to Reid.

**144**

If there is any ambiguity in a policy of insurance, and here that included the application for it, it is the fault of the insurance company. If the language used is susceptible to two interpretations, the one will be adopted most favorable to the insured.

When, in addition to this, those skilled in insurance are in disagreement as to whether life insurance with double indemnity and disability features should be counted as additional health or accident insurance, language of a health and accident policy requiring disclosure of additional insurance of such a character cannot be held to embrace life insurance policies with double indemnity and disability features without doing violence to the well-settled rule of construction to which we have referred.

Insurance men who testified at the trial below disagreed as to the interpretation of Question 6(a). A life insurance policy providing for specific benefit for the loss of an eye or leg, and double indemnity for accidental death, were not included in Question 6(a) of defendant's application relative to other insurance. Bowles v. Mutual Benefit Health & Accident Association, CCA 4th, 99 F.2d 44, 119 A.L.R. 756, and cases therein cited.

We conclude, therefore, that whether or not the double indemnity and disability features of a group life insurance policy should otherwise be construed as being within the requirements of notice of other insurance contained in the accident and health policy, the testimony as to the understanding of insurance men shows that there is real ambiguity in the language as used in the application for the policy sued on; resolving that ambiguity as we must, in favor of the insured, we hold that the language has no reference to life policies containing double indemnity and disability features, and that the policy sued on was not avoided under Standard Provision 15 by reason of the failure to give notice of The Travelers Insurance policy.

The last argument referred to in appellant's brief is based on the exclusion of page 1 of the coroner's report which includes "10," and what is appended under "Remarks":

"10. Cause of death 16 guage shot gun wound in chest-suicide.

"Remarks:—Remains laying on back parallel with bed with his head toward foot of bed. Shot gun laying across bed pointing toward remains, and near pillows on head of bed. Splattered blood on side of bed near head of bed— blood spattered flash light standing on floor near head of bed. A long pool of blood between bed and remains— clothing laying on floor nearer foot of bed between bed and remains. Remains dressed in under clothes only. Gun was empty."

The entire argument of appellant on this point is as follows:

"The exclusion of the first page of the report transgresses the well-known rule that part of the report being admitted, as it was by consent, all must come it (sic). It further transgresses the rule that the original of the report was kept by an official of Cullman County in the ordinary course and performance of his official duties and functions."

This case was tried by the court without a jury. The question of suicide was litigated, argued, and, we think, fully understood by the trial court. Supreme Court Rule 45 provides that no judgment may be reversed or set aside on the ground of improper admission or rejection of evidence, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.

If the exclusion of page 1 of the coroner's report was error, which we do not decide, it was clearly error without injury. Supreme Court Rule 45.

We find no error to reverse and the judgment of the lower court is affirmed.

Affirmed.

SIMPSON, MERRILL and HAR-WOOD, JJ., concur.