HUBBARD v. MUTUAL RESERVE FUND LIFE ASS'N.

(Circuit Court of Appeals, First Circuit.   March 29, 1900.)

No. 290.

1. LIFE INSURANCE—CONSTRUCTION OF POLICY—WARRANTY OF STATEMENTS IN APPLICATION.

Where an application for life insurance recites that the answers and statements in this application "are warranted to be full, complete, and true," and that, if they are not so, the policy issued thereon "shall be null and void," and also stipulates that the answers which it contains are parts of the policy, the policy and the application together constitute the written agreement of insurance, and both the insured and the beneficiary under the policy are bound by the warranty of the answers and statements in the application, although some of the questions and answers are of such a character as to preclude the idea that the parties intended to make them the subject of warranty.

2. SAME—CONSTRUCTION OF PARTICULAR QUESTIONS.

The question in an application for life insurance, as to how long since the applicant consulted or was attended by a physician, refers to a consultation about some substantial injury or ailment, and not concerning a slight and temporary indisposition.

3. SAME—TRUTH OF ANSWERS A QUESTION FOR JURY.

Where the question, "Has the applicant ever had any illness, local disease, injury, mental or nervous disease or infirmity?" is answered in the negative, in an application for life insurance, and, in an action upon the policy, there is evidence that each of several physicians pronounced the applicant to have had a specific malady, which the others did not discover, the plaintiff is entitled to go to the jury upon the issue that each was mistaken, and that no malady existed.

4. SAME.

The question, "How long since you consulted or were attended by a physician?" was answered by an applicant for life insurance, "Not since childhood," and because of such answer no answer was recorded to the question, "For what disease or ailment?"   In an action upon the policy, the evidence showed that within five years preceding the application the applicant complained to a physician of having suffered from priapism for a number of years, and that he was treated for such supposed difficulty continuously for over six months, when he was sent to another physician, who pronounced his trouble dyspepsia, and prescribed for him accordingly. Held that, conceding that the applicant as a matter of fact was free from each disease, the evidence showed a breach of the warranty given in the application, that the applicant had not "consulted" physicians for a supposed persistent ailment, nor been "attended" nor "prescribed for" by them.

5. SAME—FRAUD.

Where an applicant for life insurance represents in his application that he has never had any illness, local disease, or infirmity, and that he has not since childhood consulted or been attended by a physician for any disease or ailment, when in fact he was supposed to suffer for a number of years from priapism, and has consulted physicians, and been prescribed for for such ailment, he may be guilty of such fraudulent design in obtaining the insurance as will avoid the policy.

In Error to the Circuit Court of the United States for the District of Rhode Island.

Lewis S. Dabney and Edward D. Bassett (Edward L. Mitchell, on the brief), for plaintiff in error.

Walter F. Angell (George Burnham, Jr., on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is a writ of error, in which the only question pending before us is whether or not, in the court below, the learned judge properly directed a verdict for the defendant in a suit on a life insurance policy. 80 Fed. 681. The action was brought in the district of Rhode Island. We have not been advised where the contract was made, but, apparently, it was made in that state, and is governed by its laws. However, this is not important, because there is no contention that the policy and application are not governed by the rules of the common law.

The policy issued on March 20, 1891, on an application made on March 12th by the person whose life was insured. The defense is a breach of warranty, in that certain statements made in the application were not true. The application was not attached to the policy, but the policy contained the following: "In consideration of the answers, statements, and agreements contained in the application for this policy of insurance, which are hereby made a part of this contract," etc. The application, among other things, contained the following: "It is hereby agreed that the answers and statements in this application * * * are warranted to be full, complete, and true; * * * that, if any of the answers or statements made are not full, complete, and true, * * * the policy issued hereon shall be null and void." The application also stipulated that it, and the answers which it contained, were parts of the policy. Neither the policy nor the application contained any expressions inconsistent with this word "warranted," nor with the express agreement that, if the answers and statements were not "full, complete, and true," the policy should be null and void. The only questions and answers which we need repeat are the following:

"Has the applicant ever had any illness, local disease, injury, mental or nervous disease or infirmity? Ans. No.

"If yes, state nature, date, duration, and severity of attack.

"How long since you consulted or were attended by a physician? Ans. Not since childhood.

"State name and address of such physician.

"For what disease or ailment?

"Give name and address of each physician who has prescribed for or attended you within past five years, and for what diseases or ailments, and date. Ans. Have had none.

"Have you used externally or internally any patent, proprietary, or other medicines within the past two years?. If so, what, and for what diseases? Ans. No.

"Has the applicant been an inmate of any infirmary, sanitarium, retreat, asylum, or hospital? If so, where? When? Duration? For what cause? State expressly each and every case. Ans. No.

"Have any facts regarding your past health or present condition been omitted? Ans. No."

Blanks were left for answers to the second, fourth, and fifth of the foregoing questions; but the answers to the previous questions left it unnecessary to fill them, and they were not filled.

The issues raised on these questions and answers are whether, under the circumstances, the answers were warranted as true, and have effect under the stipulation that, if they were not true, the policy should be void, and, further, as to the effect of particular words which the answers contain. On the first issue, and also as to the general rules of interpretation of such questions and answers, we need not look beyond the decisions of the supreme court, which has several times thoroughly considered this topic. The plaintiff relies on the line of cases of which Insurance Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644, is one. We believe the earliest of this class is First Nat. Bank of Kansas City v. Hartford Fire Ins. Co., 95 U. S. 673, 24 L. Ed. 563. All contain essential features which are not found at bar. The well-known rule with reference to the interpretation of insurance policies was applied, to the effect that, when they contain contradictory provisions, or are doubtful, the construction favors the insured. For example, in First Nat. Bank of Kansas City v. Hartford Fire Ins. Co., already referred to, it appears in the opinion of Mr. Justice Harlan, speaking in behalf of the court, at page 676, 95 U. S., and page 564, 24 L. Ed., that the application contained the words, "so far as known to him." Moreover, it appears that, while in one part of the application the insured was made to stipulate for a warranty, in another part the word "representation" was used. So, in the familiar case of Moulor v. Insurance Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447, the same peculiarities were found. It is so apparent that the same especial condition of things existed in Insurance Co. v. Raddin, supra, that it is not necessary to analyze the opinion there rendered.

These decisions, however, establish two propositions which bear directly on the case at bar. In First Nat. Bank of Kansas City v. Hartford Fire Ins. Co., supra, the opinion of Mr. Justice Harlan, at page 675, 95 U. S., and page 564, 24 L. Ed., states as follows:

"The entire application having been made, by express words, a part of the policy, it is entitled to the same consideration as if it had been inserted at large in that instrument. The policy and application together, therefore, constitute the written agreement of insurance; and, in ascertaining the intention of the parties, full effect must be given to the conditions, clauses, and stipulations contained in both instruments."

In Insurance Co. v. Raddin, the opinion of Mr. Justice Gray, at page 190, 120 U. S., page 503, 7 Sup. Ct., and page 647, 30 L. Ed., says: "In the contract before us, the answers in the application are nowhere called warranties or made a part of the contract." At page 189, 120 U. S., page 502, 7 Sup. Ct., and page 646, 30 L. Ed., it says: "But the parties may by their contract make material a fact that would otherwise be immaterial, or make immaterial a fact that would otherwise be material."

It is sufficient to say, therefore, with reference to all the decisions to which we have referred, that the case at bar does not contain the elements which enabled the court to declare that the answers in the application were representations, and not warranties. Moreover, the supreme court has firmly maintained the rule that, under the conditions existing in the case at bar, the answers in an application are to be held as warranties, and has administered the law accordingly. Jeffries v. Insurance Co., 22 Wall. 47, 22 L. Ed. 833; Insurance Co. v. France, 91 U. S. 510, 23 L. Ed. 401. These cases were reaffirmed in Moulor v. Insurance Co., supra, at pages 340, 341, 111 U. S., page 469, 4 Sup. Ct., and page 449, 28 L. Ed., in the following language:

"If, upon a reasonable interpretation, such was the contract, the duty of the court is to enforce it according to its terms; for the law does not forbid parties to a contract for life insurance to stipulate that its validity shall depend upon conditions or contingencies such as the court below decided were embodied in the policy in suit."

This expression is to be particularly noted with reference to what we may say hereafter in the detailed examination of the case at bar, because, while the opinion applies the rule which we have stated, that in doubtful cases the court must lean in favor of the insured, yet it here affirms that the contract is to have "a reasonable interpretation." Therefore the court is not to strain the letter for the purpose of imposing an obligation on the insurer which a fair interpretation would not impose on an obligor in any other contract.

As against the conclusion that in this case the applicant, as well as the plaintiff to whom the policy was made payable, are bound by the law of warranty, the plaintiff in error maintains that some of the questions which the application contained are of such character that it is absurd to conclude that the subject-matter of them could constitute a warranty according to the mutual intention of the parties. This is true as to a few of the questions propounded, but the great majority of them, especially of those which we have quoted, are not of this class. To hold, because there are some exceptional questions and answers of the character referred to, that, therefore, the court should wholly reject an explicit stipulation, would be a rude method of construction, without discrimination. The exceptional questions and answers referred to can easily yield to necessary rules so far as they are concerned, leaving the mass to be controlled by the expressed intention of the parties.

We pass now to the next question, which is as to the general rule of construction to be applied to the particular words used in the questions and answers which form the application. As to this, the rule given us by the supreme court is in some respects more favorable to the assured, and in other respects less favorable, than those applied by the courts of the various states, as they will be found conveniently grouped in the notes to section 31 of Cooke's Law of Life Insurance (1891). The key to this question is in the expression of Mr. Justice Harlan, in Moulor v. Insurance Co., supra, at page 340, 111 U. S., page 469, 4 Sup. Ct., and page 449, 28 L. Ed.,

that the application must be understood to relate to matters which have "a sensible, appreciable form." This rule was applied in Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 258, 5 Sup. Ct. 119, 28 L. Ed. 708, to the effect that the questions and answers in an application do not ordinarily concern accidental disorders or ailments, lasting only for brief periods, and unattended by any substantial injury or inconvenience, or prolonged suffering. Indeed, they must have relation to the rule de minimis lex non curat, and to a sensible construction, and so they apply, ordinarily, only to matters of a substantial character. Therefore we accept the proposition of the plaintiff in error with reference to the word "consulted," found in these questions, that it would not relate to the opinion of a physician concerning a slight and temporary indisposition, speedily forgotten. The difficulty, however, is that this qualification has no relation to the facts of the case at bar.

The plaintiff in error also maintains that the case should have been submitted to the jury, for the jury to interpret the effect of the questions and answers on which the case turns. The law on this point, however, is clear. It is true that the essential words which we have occasion to consider have no technical meaning, and are not known to the law. They are in common use, and as to them the law gives the jury no exact or imperative construction, as applied to a mixed, complicated, or disputed condition of proofs. On the other hand, where the facts are clear, it is the undoubted duty of the court, as settled by uniform practice, to assume to itself the exclusive construction and application of words in common use, used in a written contract, to the same effect as it would words of a technical character, known to the law. The rule in this particular was explained with reference to this class of cases in Northwestern Life Ins. Co. v. Muskegon Bank, 122 U. S. 501, 505, 506, 7 Sup. Ct. 1221, 1223, 30 L. Ed. 1100, 1102. There the words in question were "habitually intemperate," and the facts were complicated and in dispute. The court observed:

"We do not know of any established legal definition of those words. As they relate to the customs and habits of men generally in regard to the use of intoxicating drinks, and as the observation and experience of one man on that subject is as good as another of equal capacity and opportunities, their true meaning and signification would seem to be a question addressed rather to the jury than to the court. While there may be on the one hand such a clear case of intemperate habits as to justify the court in saying that such and such facts constitute a condition of habitual intemperance, or on the other such an entire absence of any proof, beyond an occasional indulgence in the use of ardent spirits, as to warrant the opposite conclusion, yet the main field of inquiry, and the determination of the question within it, must be submitted to the jury, and the question on this submission must be decided by them."

Under the circumstances, as we will show more clearly when we come to deal with the specific facts, there was nothing which in this connection the court below was required to submit to the determination of the jury.

With reference to the first question which we have quoted from the application, that is to say, "Has the applicant ever had any illness, local disease, injury, mental or nervous disease or infirm-

ity?" which was answered in the negative, in view of its sweeping character, in all particulars, including the very doubtful intention of some of its terms, both from scientific and popular standpoints, covering, as it does, the entire life of the applicant from his birth to the date of the application, it might well be questioned whether it was not of the class of questions to which the plaintiff in error has called our attention, as to which it might well be assumed that the parties contemplated no warranty to arise from a mere negative answer to it. But we have no occasion to determine this, because the facts are of such character that, so far as this question was concerned, the plaintiff in error would have been entitled to go to a jury. The testimony on this point came from three physicians, Dr. Gardiner and Dr. Seguin, to each of whom we will again refer, and Dr. Wedgewood. Dr. Wedgewood's testimony related to a period subsequent to the issue of the policy, and was clearly subject to review by the jury. Dr. Gardiner and Dr. Seguin each pronounced the applicant to have had a specific malady which the other did not discover. So the plaintiff in error would have been entitled to go to the jury on the issue that each was mistaken, and that no malady existed. Therefore the case turns on the words found in the other questions, "consulted," "attended," "prescribed," in connection with the words "diseases or ailments." The question with reference to the use of medicines within two years is out of the case, because, although it is apparent that the applicant had used them, yet the dates were so uncertain that the court could not properly take that matter to itself.

We will next notice the proposition, made by the plaintiff in error, that, inasmuch as the fifth of the questions which we have recited is, "For what disease or ailment?" and inasmuch as practically the same words are repeated in the sixth, it follows that this group of questions has no effect unless there was in fact an existing disease or ailment. Whether there was, we have already shown would have been a question for the jury. So that, if the plaintiff in error were right in this proposition, the court below had no power to dispose of the case as it did. This, however, is forgetful of what we have already said, that notwithstanding that, when the meaning is doubtful, there is to be a leaning in favor of the insured, yet the whole is to have a reasonable construction. The reasonable construction is the natural sense of the words used, which, in order to sustain the plaintiff in error, must be made to read as though the question was, "What ailment or disease did he discover?" The reasonable and natural intendment of the group of questions in this particular is that accepted by Judge Devens in his opinion in Cobb v. Association, 153 Mass. 176, 178, 26 N. E. 230, 231, 10 L. R. A. 666, 668, where he approved an instruction to the jury as follows:

"If the insured, being, as he supposed, in need of a physician, went to one for the purpose of consulting him as to what was the matter with him, and had an interview, answering such inquiries as the physician deemed pertinent, receiving aid, advice, or assistance from him, the insured consulted a physician, within the meaning of the interrogatory."

It is plain that this indicates the proper construction of this class of questions, so far as they relate to this particular proposition of the plaintiff in error; so the proposition does not commend itself to us.

The following facts bearing on the application of these questions and answers are uncontrovertible, and their effect is not avoided by anything in the record: It appears by the testimony of Dr. Gardiner that he was the family physician of the applicant for the policy, and that he fixed the dates essential to this case by the fact that the witness performed an operation in the applicant's family in March, 1888, and that it was several months subsequently that the applicant first consulted him. This brings all the transactions to which we will refer within the period of five years named in the sixth of the questions which we have quoted. Dr. Gardiner further testifies that the applicant complained of priapism, and that he stated that he had been suffering from it for a number of years; thus showing that the difficulty, or supposed difficulty, about which he conferred with Dr. Gardiner, was not an incidental matter, but one of long standing. Neither were the conferences incidental, because Dr. Gardiner testifies that they covered a period of six months. He also testifies that he prescribed to relieve this supposed priapism several times, and that he prescribed different remedies, to the extent that, as he says, probably every time the applicant came his medicine was changed. The witness adds: "He got no relief from anything I suggested to him. He would try one thing for three or four weeks, and come in again and say he was no better,—was troubled just as badly as before; and naturally I would suggest some other course of treatment,—some other drug." Therefore it appears that Dr. Gardiner prescribed for him, and this not incidentally, but continuously. With reference to the applicant's visits, Dr. Gardiner, as well as Dr. Seguin, naturally drops into the use of the word "consulted."

As to the nature of priapism, Dr. Gardiner testifies that it is not a disease, but a symptom. As a cough is a symptom, so, he says, priapism is a symptom of some nervous disorder. Dr. Seguin testifies that priapism is to be classed as a nervous disease, but that a man affected with it may be healthy. In this connection, it is proper to observe that the questions put in the application do not stop with the word "disease," but add the words "or ailment." It cannot be questioned that these words must be accepted as broadening out the expression, and as covering mere symptoms, so long as they are in themselves troublesome, as priapism is troublesome; so that the fact that Dr. Gardiner describes priapism as only a symptom does not aid the plaintiff in error any more than it would for one to maintain that, though he had consulted a physician for a persistent and troublesome cough, lasting for years, it was not a disease, but only a symptom. In the supposed case of such a cough, there would be an unquestioned concurrence that it was an "ailment," within the group of questions which we have copied, and the same concurrence would exist with reference to priapism, if it were so well known as coughs.

Passing to Dr. Seguin, the applicant for the policy in suit went to him with a letter from Dr. Gardiner, dated on May 29, 1889, which stated that the applicant had been troubled with priapism for about 20 years, and that he (Gardiner) had tried everything he could think of, but without relief. Dr. Seguin did not find that the applicant was afflicted with priapism, but he testifies that he was suffering from dyspepsia, which had been "going on for some time." The applicant gave him his symptoms as follows:

"For years has had a pain or distressed tender state of the middle of the abdomen, with a rising sense of tightness from the chest to the neck. Some backache, and some sacro-sciatic pain. Good appetite, and no constipation. Gastric symptoms come on after eating."

Dr. Seguin also testifies that he prescribed for the applicant as follows: To eat less farinaceous food, and to take diluted muriatic acid in water after meals. He gives the matter more fully in another part of his testimony, showing that he prescribed with relation to both the supposed priapism and the dyspeptic symptoms.

As we have already observed, none of these matters were incidental. They were all persistent, and they covered a considerable period; so that, even on the reasonable construction to which we have referred, that questions and answers of this class have no relation to merely incidental matters, it is true that, contrary to the warranties given in the application, the applicant "consulted" physicians for a supposed persistent ailment, and was consequently "attended" and "prescribed" for by them. In these three particulars it is impossible to hold other than that the warranties were broken, and it would have been improper to permit a jury to find that they were not.

But it may well be said that the case takes on a more serious aspect, to the extent that it may well be doubted whether the defense is a technical one. The facts which we have gone over were of such a persistent and engrossing character that it is impossible that they could have gone from the mind of the applicant under the probing of the questions cited, especially in view of the last question and answer, as follows: "Have any facts regarding your past health or present condition been omitted? Answer. No." Chancellor Kent, in his Commentaries (volume 3, *p. 282) says:

"If the misrepresentation was by fraudulent design, it avoids the policy, without staying to inquire into its materiality; and, if it was caused by mistake or oversight, it does not affect the policy, unless it was material, and not true in substance; and in that case it will vitiate the policy without assuming the ground of fraud, for it is not the contract the party undertook to make."

We have no occasion to explain precisely what was meant by Chancellor Kent in the latter part of this extract. Apparently, there is enough in the case at bar to bring it within his first expression. Fraudulent design on the part of one who knowingly persists in an untruth, which he must understand acts on the mind of the party with whom he is contracting with reference to the subject-matter of the contract, does not require to be proved by circumstances aside from the mere facts that the statements were not

true, that they were known to be untrue, that they related to matters which were present in the mind of the party who made the statements at the time he made them, and that it would reasonably be understood that they influenced the mind of the other contracting party. The case is so persuasive to the effect that all these elements exist, as to the questions and answers so persistently put to the applicant, that a verdict for the plaintiff in error could hardly have been permitted, independently of the question of a technical warranty.

The judgment of the circuit court is affirmed, and the costs of this court are awarded to the defendant in error.