# MAYS *v.* NEW AMSTERDAM CASUALTY COMPANY.

Accident or Disability Insurance; Witnesses; Physicians and Surgeons; Questions for Jury.

1. Statements printed in an application for insurance, and submitted to an applicant for the purpose of eliciting from him all facts thought by the insurer to be material, should be free from ambiguity; and if the policy of which such statements are made a part is so drawn as to require interpretation and to be fairly susceptible of two different constructions, that one will be adopted that is most favorable to the insured; and especially is this true of a policy where it is claimed that a misstatement, material or otherwise, avoids the policy.

2. A clause of a printed statement in an application for accident or disability insurance, to the effect that no application ever made by the applicant for insurance has been declined, being of doubtful meaning, will not be construed to include a prior rejection for life insurance, where the remaining clause of such statement, and other statements in the application, relate solely to accident, disease, or illness insurance.  If the insurer desires information concerning rejections for life insurance, it should frame its statement to that end.

3. The plaintiff in an action on an insurance policy, by producing a physician who testifies in her behalf, as to the physical condition of her husband, the insured, shortly after his injury, does not waive the right, under D. C. Code, sec. 1073 (31 Stat. at L. 1358, chap. 854), prohibiting a physician, without the consent of the patient or his legal representative, from disclosing any confidential information acquired while professionally attending the patient and which was necessary to

enable him to act in that capacity, to object to the testimony of a physician produced by the defendant, as to the result of an examination made by him of the insured at a different time, as to which the plaintiff has not testified. (Following *Prudential Ins. Co.* v. *Lear,* 31 App. D. C. 184, and *Baltimore & O. R. Co.* v. *Morgan,* 35 App. D. C. 195.)

4. A statement printed in an application for accident or disability insurance, requiring a declaration on the part of the applicant that he has not received medical or surgical attention within a period of five years, must receive a reasonable interpretation, and does not relate to the opinion of a physician concerning a slight and temporary indisposition leaving no impress upon the mind; and where, in an action upon the policy issued on such application, the evidence is conflicting as to the applicant's receiving such attention, it is for the jury to determine, under proper instructions, whether, within the meaning of such statement, his answer thereto was a fair and true one.

5. A statement printed in an application for accident or disability insurance, to the effect that the applicant is "in sound condition, mentally and physically," does not require the applicant to do more than state his honest belief that he is not suffering to an appreciable degree with any bodily ill; and where, in an action upon the policy issued on such application, the evidence is conflicting as to whether the applicant was "in sound condition" physically at the time the policy was issued to him, the question is for the jury to determine. (Following *Healy* v. *Metropolitan L. Ins. Co.* 37 App. D. C. 240.)

No. 2484.   Submitted March 7, 1913.   Decided April 7, 1913.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon a verdict for defendant directed by the court in an action on an accident and disability policy of insurance.            *Reversed.*

The facts are stated in the opinion.

*Mr. John C. Gittings, Mr. J. Morrill Chamberlin, Mr. Douglas S. Mackall,* and *Mr. James R. Caton* for the appellant.

*Mr. F. D. McKenney, Mr. J. S. Flannery,* and *Mr. William Hitz* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

Appeal from a judgment upon a directed verdict for the defendant, New Amsterdam Casualty Company, in the supreme court of the District, in an action upon an accident and disability policy of insurance issued by the defendant to George W. Mays, the plaintiff herein, Lucy D. W. Mays, being his wife and the beneficiary under said policy.

In 1901 Mr. Mays, through Thomas A. Weeden, then agent for the Pacific Mutual Life Insurance Company, made an application for life insurance in that company, and, upon an examination indicating diabetes, his application was rejected. The Pacific Mutual also wrote accident and health insurance, and it is in evidence that a policy covering accidents only was issued by this company to Mr. Mays December 20, 1901. This policy was renewed annually until December 20, 1904, when it expired. On August 18, 1903, the company also issued to Mr. Mays a health insurance policy, which was thereafter annually renewed until Mr. Weeden gave up his agency with the Pacific Mutual and became the agent of the defendant company, when, owing to his friendly relations with Mr. Mays, he according to his testimony, induced Mr. Mays "to change his accident policy in the Pacific Mutual to the defendant company," the date of the present policy being September 27, 1906. On January 7, 1910, Mr. Mays was accidentally injured by having his shin cut in attempting to board a street car, which injury resulted in his death on the 20th of that month. The policy was in force at the time of his death, all premiums having been paid regularly.

Indorsed on the policy and made a part thereof is a schedule of "Statements Made by the Assured." Under the terms of the policy these statements are made on acceptance thereof, and warranted to be true. They are in printed form, the assured doing no more than to supply the information which it is their object to elicit from him. We here reproduce statements 10 to 14 inclusive:

"Statement 10. My income per week from the above occu-

pation exceeds the gross amount of Weekly Indemnity under all Policies carried by me except as follows: $135.00-$145.00 per month.

"Statement 11. I have no Accident, Disease, or Illness Insurance issued by this or any other Stock Company, Assessment or Fraternal Association except as follows: $5,000.00 Ætna expires Dec.

"Statement 12. If during the period of this Policy I take other accident, disease, or illness insurance, providing weekly indemnity, which, together with that provided by this policy, shall be in excess of my weekly earnings from the above occupation, I agree to report the same to this company.

"Statement 13. No application ever made by me for Insurance has been declined, and no Accident, Disease, or Illness Policy issued to me has been canceled or renewal refused, except as follows: No exceptions.

"Statement 14. I have never made claim nor received indemnity for any accident, disease, or illness, except as follows: $125.00—Travelers Ins. Co. about 1890."

The court, being of the opinion that the failure of Mr. Mays to mention in statement 13 the rejection of his application for life insurance by the Pacific Mutual Life Insurance Company in 1901 constituted such a false statement as to void the policy, directed a verdict for the defendant, the plaintiff reserving an exception. In approaching the consideration of the question whether Mr. Mays furnished the company all the information concerning prior insurance called for by its printed schedule, we must have in mind the humane and well-established rule that "if the policy is so drawn as to require interpretation and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured." *Thompson* v. *Phœnix Ins. Co.* 136 U. S. 287, 34 L. ed. 408, 10 Sup. Ct. Rep. 1019. "The rule is," said the court in *McMaster* v. *New York L. Ins. Co.* 46 L. ed. 64, 73, 22 Sup. Ct. Rep. 10, 183 U. S. 25, 40, "that if policies of insurance contain inconsistent provisions, or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain rather

than forfeit the contract." Where statements are printed by the company, and submitted to the applicant for the purpose of eliciting from him all facts thought by the company to be material, those statements should be free from ambiguity. It would be a harsh and unjust rule, indeed, that would void a policy where, under one interpretation of such a statement, the response of the applicant was reasonable and proper, because under another interpretation his answer was not sufficiently comprehensive. Such statements should not require interpretation. Their language should be so directed and simple as to be easily understood and not open to doubt or conjecture. Especially is this true in a policy where it is claimed that a misstatement, material or otherwise, is fatal to the validity of that policy. The authorities to which we will now refer fully sustain this view.

*Mutual Reserve L. Ins. Co.* v. *Dobler,* 70 C. C. A. 134, 137 Fed. 550, was an action on a life insurance policy. One of the defenses was that the insured had not truthfully answered the question: "Have you any other assurance?" The application also contained the question: "Have you now any insurance on your life? If so, where, when taken, for what amounts, and what kinds of policies?" It appeared that at the time these questions were answered the applicant had one accident policy for $5,000 and another for $1,000, and it was contended that the failure to so state amounted to a breach of warranty. The company's agent knew of this accident insurance, and informed the insured that accident insurance was not called for by the question: "Have you any other assurance?" The circuit court of appeals said: "It seems to us reasonably clear that the first of these questions does not call for a disclosure of any insurance except that which is known as life insurance. In the ordinary understanding or usage there is a well-defined distinction between life insurance and accident insurance. * * * We think that the most that can be claimed in behalf of the plaintiff in error for the questions so propounded to the applicant was that they were so worded as to leave it uncertain whether they called for a disclosure of the accident insur-

ance which he carried at that time.  If the insurance company in its printed application employed ambiguous terms or words of doubtful import, it cannot complain if they were construed as they were by the applicant, or if the agent so advised him as to their meaning."  The court ruled that the second question, while more comprehensive than the first, must be construed with the first, and that, when so construed, its evident purpose was to inquire whether the applicant had fully answered the previous question, and that its purport was, "Have you now answered as to all life insurance that you carry?"

In *Dineen* v. *General Acci. Ins. Co.* 126 App. Div. 167, 110 N. Y. Supp. 344, an action upon an accident and health insurance policy, the words, "No application ever made by me for insurance has ever been declined, and no accident or health policy issued to me has been canceled, or renewal refused, except as herein stated," were interpreted by the appellate division of the supreme court.  It will be observed that this language is almost identical with the wording of the statement which we are called upon to interpret in the present case.  The court said: "There is no question in the application which specifically calls upon the plaintiff to disclose whether he has ever been rejected by a life insurance company.  The general statement is made that no application for insurance had been declined.  This statement follows the declaration that the applicant has no accident insurance, and precedes one in the same clause that no such policy has been canceled or renewal refused, and the plaintiff might well have inferred that the inquiries were directed solely to accident or health insurance.  *  *  * An insurance company which is making every statement, whether material or otherwise, a warranty must be held to a very strict rule when it is endeavoring to avoid payment on its insurance contract because of answers to inquiries or declarations which it has framed.  They must be so plain or intelligible that any applicant can readily comprehend them.  If any ambiguity exists, the construction will obtain most favorable to the insured [citing cases].  The defendant might easily have extended its statements to include the rejection by a life

insurance company, and then the warranty, if false, might have avoided the policy. It cannot, however, by an uncertain phrase dependent upon an interpretation favorable to itself, deprive the plaintiff of the benefit of a policy for which he has paid, and honestly believed was in full force. Literally construed, if the plaintiff's application for a fire insurance policy had been declined, the policy in suit would be void from its inception."

In *Penn Mut. L. Ins. Co.* v. *Mechanics' Sav. Bank & T. Co.* 38 L.R.A. 33, 19 C. C. A. 286, 37 U. S. App. 692, 72 Fed. 413, it was held that certificates in the Knights of Pythias and the Royal Arcanum Mutual Aid Associations were not within the description, "policy of life insurance in any other company." So, too, it has been held that there is such a difference between mutual aid associations and insurance companies that statutory provisions affecting insurance companies do not embrace such associations, and this, notwithstanding one of the prominent characteristics of such associations is the obligation to pay a fixed sum as insurance upon the death of a member. *Dickinson* v. *Ancient Order, U. W.* 159 Pa. 258, 28 Atl. 293. Again, in *Continental L. Ins. Co.* v. *Chamberlain,* 132 U. S. 304, 311, 33 L. ed. 341, 344, 10 Sup. Ct. Rep. 87, where the question was asked an applicant for life insurance whether he had "any other insurance on his life," it was held that the purport of the word "insurance" in the question was not "so absolutely certain as, in an action upon the policy, to preclude proof as to what kind of life insurance the contracting parties had in mind when the question was answered."

Coming back to the policy here in issue, we find that under statement 10 the insured was required to state whether the weekly income received by him from his occupation exceeded the gross amount of weekly indemnity under *all policies* carried by him. Clearly "all policies," as used in this statement, did not include life insurance policies, for weekly indemnities are not paid under such policies. In other words, "all policies," as used in this statement, excluded life policies. Statement 11 also applies exclusively to accident, disease, and ill-

ness insurance. Statement 12 emphasizes and makes still more certain the character of information desired in the preceding statements, for there the applicant agrees, if during the life of the policy he takes out "other accident, disease, or illness insurance," etc., to report same to the company. In statement 13 the applicant represents that no *application* made by him for insurance has been declined, and no accident, disease, or illness policy *issued* to him has been *canceled* or *renewal refused.* Statement 14 concerns indemnity received by the insured for any accident, disease, or illness. It thus appears that under no possible construction can any of said statements be said to relate to life insurance, unless it be the first clause of statement 13. But that clause does not stand alone, nor should the language of the statement be construed without reference to the context, since its phraseology is such as to raise a doubt as to its meaning. Having in mind the preceding statements and the one following it, we think the assured was justified in assuming that he was not expected or required to state that he had been declined for life insurance. Indeed, the very language of the statement lends cogency to this view. The first clause requires the assured to certify that an *application* has not been declined, while the second clause goes a step farther and requires a declaration that no such policy, that is, "no accident, disease, or illness policy" *issued* to him "has been *canceled* or *renewal refused."* In other words, the first clause relates to an unsuccessful attempt to obtain accident, disease, or illness insurance, while the second relates to the cancelation or refusal to renew such insurance. We think the statement may be interpreted as though it read: "No application ever made by me for accident, disease, or illness insurance has been declined, and no policy issued to me for such insurance has been canceled or renewal refused." That this was the interpretation placed upon the statement by the company's own agent is very clear from his testimony in this case. He was asked whether, at the time he wrote this policy, he had forgotten that Mr. Mays had once been rejected, and replied: "I can't say that I had forgotten. It was a different form of insurance. *   *   * The former

was for life insurance, and this is for accident insurance,—a different proposition.  *  *  *  It was a different form of insurance that he was applying for (the present application), and the questions I asked him were with reference to that portion of the application, and he answered them." The company's agent, who was presumably familiar with the scope of these questions, not understanding them to embrace life insurance, it is not strange that the assured adopted the same view. Moreover, the very company that declined to write a life policy for Mr. Mays subsequently issued to him a health policy which was several times renewed. This circumstance, the ambiguity of statement 13, and the interpretation apparently placed upon that statement by the agent of the defendant, tended to lead the assured to believe that his answer was sufficiently comprehensive. We conclude that if information concerning a prior rejection for life insurance was desired by the defendant, it should have framed its statement to that end.

The plaintiff produced as a witness a physician who attended Mr. Mays shortly after his injury. Subsequently, over the objection and exception of the plaintiff, a physician was permitted to testify for the defendant that he had treated Mr. Mays prior to his injury; that he was then suffering from boils about his neck and shoulders, and that an examination of his urine indicated diabetes. We think this was error. *Connecticut Mut L. Ins. Co.* v. *Union Trust Co.* 112 U. S. 250, 253, 254, 26 L. ed. 708, 710, 5 Sup. Ct. Rep. 119; *Prudential Ins. Co.* v. *Lear,* 31 App. D. C. 184; *Baltimore & O. R. Co.* v. *Morgan,* 35 App. D. C. 195. In the latter case, where, as here, it was alleged that the calling of a physician by the plaintiff amounted to a waiver of the right to object to the evidence of another physician who made an examination at a different time, Mr. Justice Van Orsdel, speaking for this court, said: "We understand the rule in relation to the admission of evidence of this character, under statutes similar to ours, to be that waiver of the right can only be claimed where the party testifies to the result of a particular examination, in which case the opposing party may call the physician who made the examination

to corroborate or deny the statements made by the party; or where two or more physicians in consultation examine into the physical condition of the party, when, if one of the physicians is called by such party to testify to the results of the examination, another physician present and taking part in the examination may be called by the opposing party to testify in relation thereto. But if the physician whose evidence is sought to be introduced by the opposing party made his examination at a different time from that testified to by the physician introduced, and the party has not testified to the results of such examination, the evidence is inadmissible."

Sec. 1073 of the Code [31 Stat. at L. 1358, chap. 854] prohibits the disclosure by a physician in this jurisdiction, without the consent of the person afflicted or his legal representatives, except in certain criminal cases, of "any information, confidential in its nature, which he shall have acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." Nothing can be much more confidential than an examination of a patient by a physician, and nothing can be much more necessary, in our view, to enable the physician to act intelligently. To hold that the nature of the particular illness, and not the relationship of physician and patient, is to determine the applicability of the provisions of sec. 1073 is practically to emasculate it, and set up a' rule dependent upon the views of the particular judge who presides at the trial.

There was some evidence tending to show that Mr. Mays had received medical or surgical attention within the period of five years preceding the date of the policy in suit, and the defendant insists that this evidence established a breach of warranty and hence justified the court in directing a verdict. Statement 17 in said schedule requires a declaration on the part of the applicant that he has not received medical or surgical attention during such period, but this statement must receive a reasonable interpretation. *Moulor* v. *American L. Ins. Co.* 111 U. S. 335, 28 L. ed. 447, 4 Sup. Ct. Rep. 466. In *Connecticut Mut. L. Ins. Co.* v. *Union Trust Co.* 112 U. S. 250, 28 L. ed. 708,

5 Sup. Ct. Rep. 119, it was held that the question in an application for life insurance whether the applicant had ever had the disease "of affection of the liver," meant an affection of that organ which amounted to disease and did not refer to every instance of slight or accidental disorders or ailments affecting the liver which left no trace of injury to health and were unattended by substantial injury, inconvenience or prolonged suffering. So, too, in *Hubbard* v. *Mutual Reserve Fund L. Asso.* 40 C. C. A. 665, 100 Fed. 719, it was held that the word "consulted," as used in a similar question, did not relate to the opinion of a physician concerning a slight and temporary indisposition leaving no impress upon the mind. In the present case, the testimony upon this point was conflicting A physician testified for the defendant to the effect that he treated Mr. Mays "sometime between 1900 and 1905; probably in 1903." In cross-examination this witness fixed the time as "in 1901 or before 1901 and 1903; does not recall date." Plaintiff's testimony tended to show that Mr. Mays did not consult this physician at that time. It was therefore for the jury to determine, under proper instructions from the court, whether Mr. Mays's answer to statement 17 was a fair and true one within the meaning of that statement.

To the further contention of the defendant that Mr. Mays was not "in sound condition, mentally and physically," within the meaning of statement 16, at the time the policy was issued to him, it is sufficient to say that, under the evidence, the question was for the jury to determine. *Healy* v. *Metropolitan L. Ins. Co.* 37 App. D. C. 240. The evidence for the plaintiff tended to show that the assured was in good health at that time and subsequently; that he did not miss a day from his work on account of illness. While the physical examination of the assured in 1901 for life insurance indicated diabetes, the evidence was conflicting as to how long that condition continued. A physician testifying for the defendant as to the condition of the assured at the time of the accident "was unable to tell with any degree of certainty length of time of existence of diabetic condition; would not tell whether it had commenced within

last six months or weeks; could not say that on September 27, 1909 (the date of the last renewal of the policy), he had diabetes." Statement 16 does not require the assured to declare his belief that he has had no symptoms of disease; hence, if he has no ailment amounting to disease, that is, an ailment of a character so well defined as appreciably to affect his health, it cannot be said that he is not in sound physical condition within the popular meaning of that term. A different ruling would make possible the voiding of almost every similar policy issued. The ordinary person is not a medical expert, and, unless he suffers some pain or annoyance, is not usually conscious of bodily ills. Inasmuch as these policies are written without medical examination on the part of the company, it is apparent, we think, that the assured is not expected to do more than to state his honest belief that he is "in sound condition" physically, that is, that he is not suffering to an appreciable degree with any bodily ill. Of course, if he is affected to an appreciable degree with any physical ailment, he cannot honestly and truthfully state that he is in sound physical condition. If there is room for doubt, the jury should determine the question.

The judgment is reversed, with costs, and the cause remanded for further proceedings.                        *Reversed.*