| | |
|---|---|
| Prudential Insurance Company of America vs. Shandel Tanenbaum | Eq. No. 7861 |

December 31, 1930.

BAKER, J. Heard on bill and cross-bill.

In this case the complainant has brought its bill within one year of the time of the delivery of two certain policies, praying that said policies may be declared null and void and that they may be ordered delivered to it to be cancelled, and that the respondent be enjoined from bringing suit upon the policies. The complainant also offers to return the premiums paid, with interest.

The respondent, who is the beneficiary named in the policies, in her cross-bill asks that she be awarded the amount of the insurance covered by said policies and that the relief prayed for by the complainant be denied.

In brief, the testimony shows that the insured, a man past middle age and the husband of the respondent, made an application for insurance to the complainant dated April 10, 1925. A preliminary medical examination was held April 19th, followed by a second on May 10th. The first policy for $10,000 was delivered and the premium paid June 9, 1925, and a second policy for the same amount was delivered and the premium thereon paid July 14, 1925. On September 27th of the same year the insured died at a hospital in New York following an operation for carcinoma of the rectum.

The application and policies involved in this litigation contain various provisions which are more or less material to the issues raised. In substance they provided that in the absence of fraud all statements made by the insured shall be deemed representations and not warranties. They also provided that the application and the policies taken together should constitute the entire contract and that no agent should have any authority to change or modify the same. In the application it was provided that all the statements and answers to certain questions were complete and true and that if the premium be not paid at the time of making the application, the policy shall not take effect until issued by the company and received by the insured and the full first premium paid, while the health of the insured remains the same as described in the application. The policies also contain the provision that they shall become incontestable after one year from their date.

The complainant contends that it should be granted the relief prayed for because the insured was guilty of fraud in the answers made to certain material questions contained in the application. These questions are numbered 8 and 9 and relate to the condition of health of the insured at the time the application was made, the statement being that he was in good health, and also relates to attendance by physicians during the three years prior to the making of the application, the answer to said last question being that no physician had attended him. The complainant claims that the testimony shows that these answers were false and fraudulent and related to a material matter.

The respondent denies this contention of the complainant and urges that she is entitled to the proceeds of the policies as beneficiary named therein.

The respondent's first matter of defence is that there is no equitable jurisdiction which would permit the sustaining of the bill. She relies chiefly on the provisions of Sec. 53, Chap. 342, General Laws of Rhode Island, 1923, which is as follows:

"No misstatement made in procuring a policy of life insurance shall be deemed material or render the policy void unless the matter thus represented shall have actually contributed to the contingency or event on which the policy is to become due and payable; and whether the matter so represented contributed to said contingency or event, in any case, shall be a question for the jury."

This section was given careful consideration by the Court in *Wells* vs.

*Great Eastern Casualty Co.*, 40 R. I. 222. It seems well settled by that case that there is nothing in the statute which prevents the rescission of a contract for insurance on the ground of fraud during the lifetime of the insured.

In the case of *Home Life Ins. Co.* vs. *Zuribowitz*, 87 Atl. 25, the Court recognized jurisdiction in equity to rescind for fraud a life insurance policy during the life of the insured.

In this connection the incontestability clause above referred to becomes of importance. The complainant urges that it brings its bill within the year following the date of said policies and prior to any action at law brought thereon by the respondent in order to protect its rights, because it seems reasonably clear that after the year has expired there might well be serious question whether the complainant could raise the issues herein contained because of the provisions of said clause.

> *Monahan* vs. *Met. Life Ins. Co.*, 283 Ill. 136, L. R. A. 1918 D, p. 1196;
>
> *Humpston* vs. *State Mut. Life Ins. Co.*, 31 A. L. R. 78;
>
> *Missouri State Life* vs. *Cranford*, 31 A. L. R. 93;
>
> *Mutual Life Ins. Co.* vs. *Hurni Packing Co.*, 31 A. L. R. 102, Note p. 108.

The Court is of the opinion that it was not the intention by the statute in question to prevent the equity court, in a proper case where questions of fraud and incontestability clauses above referred to are involved, from taking jurisdiction in order to protect the rights of parties. The Court is therefore of the opinion that the respondent can take nothing by this defence.

The Court's attention is next called by the respondent to the case of *Keenan* vs. *John Hancock Mut. Life Ins. Co.*, 50 R. I. 158, which she claims is decisive of the matter before the Court. After careful consideration, the Court believes that this case is not directly in point. In the first place, the Court there decides that the facts show that the statements made by the insured were from ignorance and not because of any fraudulent intent. In that case the insured was an infant and the Court holds clearly that an infant is not bound by his warranties in an application for life insurance, and the company can not set up the falsity of such warranties as a defence. The Court also says that these warranties are in legal effect not a part of the contract because of the infancy, and the beneficiary is not estopped by them in the absence of fraudulent conduct. In that case, apparently it was recognized that fraud was the main issue and the only ground of defence. Evidently the case turned chiefly on the point that the insured was a minor. In the opinion of the Court, therefore, it is not determinative of the issues herein.

It is undoubtedly well settled here that statements in an application for insurance made as of the applicant's own knowledge, upon which the contract is based, are warranties.

> *Wells* vs. *Great Eastern Casualty Co.*, 40 R. I. at page 230.

Neither can it be disputed that an insurance solicitor is the agent of the insured rather than of the company.

> *O'Rourke* vs. *John Hancock Mut. Life Ins. Co.*, 23 R. I. 457;
>
> *Leonard* vs. *State Mut. Life Assurance Co.*, 24 R. I. 7.

As to whether an examining physician is the agent of the company or the applicant the cases are in some conflict In this state, however, it seems clear that the medical examiner is made the agent of the company only as to that part of the application which he is required to write, and for nothing more.

> *Leonard* vs. *State Mut. Life Assurance Co.*, *supra*.
>
> *Leonard* vs. *New England Mut. Life Ins. Co.*, 22 R. I. 519.

However, because of the provisions in the policy making statements representations and not warranties in the absence of fraud, and because of the provisions of Sec. 53 of Chap. 342 of the General Laws, *supra*, there would seem to be little question but what fraud is the principal issue in the case. Fraud may be either fraud in fact or what is known as fraud in law, which does not necessarily involve moral turpitude.

It becomes necessary, therefore, to examine somewhat more fully the facts of the case in order to determine whether the complainant has, by a fair preponderance of the evidence, satisfied the Court of its claim in this connection.

The testimony undoubtedly shows that the insured did not seek out the insurance solicitors of the complainant company to procure the insurance, but that they came to him. He did not immediately accede to their suggestions put finally agreed to take a $5000 policy. The application, however, was made out for a $20,000 policy, but when this was presented to him, he refused to take it. Later the application was amended so as to call for two $10,000 policies, which the insured did eventually accept. The first medical examination is not material to the issues in the case. The second examination is the one involved herein.

The testimony is conflicting as to what took place, the doctor who examined testifying on behalf of the complainant, and the respondent and some members of her family gave evidence in contradiction. The respondent attempts to show that the doctor who made the examination asked only a few questions, that not all the answers were then written down and that some of those as written were not correct. She calls attention to the fact that on the application apparently two different inks appear. The claim on behalf of the respondent is made that the insured had difficulty understanding and speaking English. There is some testimony in the case which tends to support this position, but, on the other hand, it appears that the insured was a very successful business man in the community and not the type to be misled or overreached. The doctor testifies positively that he asked questions and wrote the answers down in the presence of the insured and his family. There is no question but what the application bears the insured's signature. The doctor also gave a reasonable explanation for the appearance of the ink on the application. It should also be kept in mind that he went to the insured's house for the express purpose of making the examination, a prior examination not having been satisfactory.

On the whole, the Court believes that the doctor asked the questions on the application, that the answers were given by the insured, or by someone for him, that he knew the contents thereof, and that he then signed the application, adopting it as his own, and is bound by the statements therein.

It can not be questioned that the answers to questions 8 and 9 above referred to were false and untrue. It is quite clear that the insured's health had not been good for at least nine or ten months prior to the making of the application and that he had seen several doctors and received treatment for at least seven or eight months before that time. In August, 1924, he consulted a doctor who gave him a careful examination and had certain tests made. At the same time an X-ray was taken of his digestive tract, but this appeared to be negative. The doctor wished him to have further X-rays taken, but he refused. He then went to a second physician, who treated him more or less regularly nearly up to the time the application for insurance was made. It is quite evident that the first doctor was suspicious of his condition and believed

he had some serious ailment. The testimony is more or less conflicting as to what was told the insured and his family by this doctor. The Court doubts whether they were told in so many words that the doctor believed the insured had cancer, but it would seem that a fair reading of the evidence tends to show that the doctor certainly attempted to bring to the mind of the insured and his family that the condition was serious and that further examination should be made. From the latter part of July, 1925, until the insured went to New York in September, he visited a large number of doctors and surgeons, some in Providence and some in Boston. These men gave evidence and many of them stand very high in their profession. One physician testified for the respondent, saying that in his opinion the cancer was of extremely recent growth and had only started a short time before the operation. Most of the doctors testifying for the complainant said that in their opinion the cancer had been of some standing and had been in existence for at least a year prior to the operation, if not longer. The weight of the testimony would certainly tend to support the complainant in this matter. Very probably the insured, when he gave the answers to the questions on the insurance application, did not know that he was suffering from cancer, but he certainly must have known that his health was not good at that time, and he certainly did know that he had been to at least three doctors during the seven or eight months preceding. The insurance company was entitled to knowledge of these facts before it issued its policies. They were facts peculiarly within the insured's knowledge. Trust answers to the questions might not have given the information to the complainant company that the insured was afflicted with a cancer, but it was information of importance which would have put the complainant upon inquiry, enabled it to ascertain the facts and then determine whether or not it desired to accept the risk.

The complainant has cited cases where it has been held that the giving of false information on material matters relating to the health and physical condition of the insured constitutes fraud which vitiates the policy.

Spaulding vs. Mut. Life Ins. Co., 109 Atl. 22;

Loving vs. Mut. Life Ins. Co. of N. Y., 117 Atl. 323;

Fay vs. Met. Life Ins. Co., 197 N. Y., Sup. 287;

Duff v.. Prudential Ins. Co., 101 Atl. 371;

Williams vs. Met. Life Ins. Co., 61 Montana 66;

Kerpchak vs. John Hancock Life Ins. Co. Co., 97 N. J. Law 196;

Lewis vs. N. Y. Life Ins. Co., 201 Mo. App. 48;

See also Hubbard vs. Mut. &c Life Ass. Co., 100 Fed. 719, Jewett vs. John Hancock Life Ins. Co., 18 R. I. 754.

Further, it would seem that the matters covered by questions 8 and 9 in the application were material and contributed to the contingency or event within a reasonable construction of the language used in the Rhode Island statute above referred to. Statements as to health and physical condition are held to be material statements and if false are fatal to any recovery on the policy.

Vol. 4, Cooley, 3268.

After a careful consideration of all the testimony on this point, the Court has come to the conclusion that the giving of the answers to questions 8 and 9 in the application by the insured constituted fraud.

The policies in question provided in substance that they should not take effect until issued by the company and received by the insured and the first full premium paid, while his health remained the same as described in the application. One policy was delivered

in June and the other in July, 1925. It is quite obvious that the insured's health was rapidly failing at this time and unquestionably he was in a worse condition than he was when the application was made in April of the same year. A provision of this type has been held in this state to be of importance.

Mohr vs. Prudential Ins. Co. of America, 32 R. I. 177.

Here it was said that the existence of good health in the insured at the time of the delivery of the policy is a condition precedent to the obligation of the company.

See also 17 L. R. A. (N. S.) p. 1144 note.

To meet this situation the respondent contends that there was a waiver of the application in this case. It appears that the original application was for a $20,000 policy but that actually two $10,000 policies were delivered. The endorsement of the change appears on the papers but apparently nowhere did the insured sign for this change or amendment, as he should have done. However, he accepted the two $10,000 policies, and paid the premiums thereon, instead of one $20,000.

The Court cannot find any clear and sufficient testimony that there was a waiver of the application. A fair and reasonable explanation of the situation would seem to be that the application for one policy of $20,000 was not abandoned but was merely changed by mutual agreement to two policies of $10,000 each.

In Wells vs. Great Eastern Casualty Co., 40 R. I. p. 320, it was held that where the insured accepted the policy, he was estopped from denying the application and that both he and the beneficiary would be bound by the statements and warranties contained in the copy of the application although the insured had neglected to sign it. It would seem that the general principles therein laid down would apply to the case at bar.

In the judgment of the Court, the complainant, on the law and on the facts, is entitled to the relief prayed for in its bill of complaint and the prayers thereof are granted on condition that complainant pays to the respondent the premiums already paid on the policies in question, with interest thereon, according to its tender, and the prayers of the respondent's cross-bill are denied and the cross-bill is dismissed.

For complainant: McGovern & Slattery.

For respondent: Frank H. Bellin.